### COMPETITION IN METAL CABINETS OF SIMILAR DESIGN.

Court of Appeals for Hamilton County.

THE SAFE-CABINET COMPANY v. THE GLOBE WERNICKE COMPANY.

Decided, January 31. 1914.

*Unfair Competition in Trade—Infringement of Rights of a Manufacturer by Putting Out a Similar Product—Injunction.*

The "cabinet safe" manufactured by the defendant from and after 1911 is so similar in size, shape, design and color to the "safe-cabinet" manufactured and sold by the plaintiff since 1905 as to easily confuse persons of ordinary intelligence as to the product which they are purchasing; and this fact, taken in connection with testimony to the effect that the defendant purchased one of the plaintiff's cabinets and caused it to be dissected in its factory, whereupon orders were given to manufacture one as nearly like it as possible without infringing the patent, affords ground for a finding that the defendant has been guilty of unfair competition and a decree enjoining its continuance.

*James L. Steuart, Gideon C. Wilson* and *John Emory Cross,* for plaintiff in error.

*Robertson & Buchwalter,* contra.

JONES, O. B., J.; SWING, J., and JONES, E. H., J., concur.

The action below was brought by plaintiff in error as plaintiff against the defendant in error as defendant, claiming that defendant had wronged and was wronging plaintiff by unfair business competition in the manufacture and sale of certain metal fireproof containers for papers, books and other articles, and in the use of the peculiar trade-name which plaintiff had originated for such manufactured articles. Plaintiff sought an injunction against the use of such trade-name and the continuance of such unfair competition, and prayed for an accounting and payment of all profits made by reason thereof.

On the hearing by the court of common pleas a decree was entered finding in favor of the defendant below and dismissing plaintiff's petition. To this decree and the proceedings below plaintiff prosecutes error in this court.

The entire record, embracing a volume of testimony containing almost 500 pages, together with a very large mass of exhibits consisting of newspaper and magazine advertisements, catalogues, circulars, cards, folders and numerous other forms of advertising matter, as well as the safe-cabinet manufactured by the plaintiff and the cabinet safe manufactured by the defendant, were submitted to the court.

After a careful consideration of this record and these exhibits the court finds that the plaintiff is a corporation organized under the laws of Ohio, about January 31, 1906, having then succeeded a partnership composed of Willis V. Dick and George D. Shad, of Marietta, who traded under the firm name of the Safe-Cabinet Company, and who founded the business now owned by plaintiff, in February, 1905, and then commenced the manufacture and sale of the goods known as safe-cabinets. This safe-cabinet was a novelty, manufactured from sheet metal in such a way as to leave an air space between two thin sheets of metal in which space was placed fireproof material in such manner as to become what is known as fireproof construction.

This partnership and its successor, the plaintiff corporation, were the pioneers in the manufacture and sale of goods of this character, and prior to their beginning in 1905 there was nothing known to the trade of the same character. The words "safe-cabinet" were applied to the article from its original construction, and have been so continued to the present time, and it has been known to the trade by such name during the entire period covered by its manufacture. During the early years of its manufacture, prior to 1909, the word "Dick" was used in different ways in connection with the name safe-cabinet, but the words "safe-cabinet" or "safe-cabinet company" appeared on all of these different products, and from and after the year 1909 the name-plate simply called it the safe-cabinet, putting on also the date of the patent, the name of the company and its place of manufacture.

These safe-cabinets were originally painted several different colors, but after numerous experiments and considerable expense the standard shape, finish and size for its product was

finally adopted by plaintiff, and for several years prior to the filing of the petition, except in cases of special order, its safe-cabinet had been painted an olive green color with a decoration in imitation of paneling with gold or yellow lines. Plaintiff made large expenditures of money in advertising and creating a market for said patented novelty and its product so patented, decorated and labeled has been sold and resold under the designation of the "safe-cabinet" in domestic, interstate and foreign commerce. The public know and recognize said goods under such trade-name, and because of the merit of the article and the extensive advertising plaintiff has built up a valuable trade and good will in the manufacture and sale of said patented novelty, painted an olive green and decorated in imitation of paneling with gold or yellow lines and bearing designation of "safe-cabinet." The special name of safe-cabinet has thus become a trade-name, and has in this manner come to have a special or secondary meaning implying that the article with reference to which it is used is of plaintiff's manufacture, the combination of name, color and decoration becoming of value as appurtenant to the good will of plaintiff's business.

The defendant is an Ohio corporation which together with its predecessors has been continuously engaged in the manufacture and sale of office furniture, sectional bookcases, files and equipment, for many years, but did not manufacture an article similar to that manufactured and sold by plaintiff, prior to February, 1911. Before defendant engaged in the manufacture of said article there was no competition whatever between the goods manufactured by the plaintiff and those of the defendant, and the same agent represented both plaintiff and defendant in many cities throughout the United States.

In February, 1911, the defendant began the manufacture and sale of a fireproof container of practically the same shape and size as that of plaintiff, and likewise painted an olive green color and decorated in imitation of paneling wth gold or yellow lines, and labeled the same "Globe Cabinet Safe." Plaintiff contends that the use of the name cabinet safe and the decoration of its goods with an olive green color and gold or yellow lines in

imitation of paneling, is a simulation by defendant of the goods
of the plaintiff, and is a fraudulent attempt on the part of de-
defendant to deceive and mislead the public and the customers of
the plaintiff into the belief that the goods manufactured by the
defendant emanated from the same source as those manufactured
by the plaintiff, and that such acts amount to unfair competition
in trade, the liability of deception being further enhanced by the
fact that defendant also imitated the shape and most popular size
of plaintiff's goods.

Plaintiff further claims that defendant's article is of inferior
workmanship and design and insufficient as a fire resistant, and
that while in outward appearance both articles are the same there
is a wide difference in their respective merits, the plaintiff's ar-
ticle offering a resistance to a high degree of heat which the de-
fendant's could not withstand.

The defendant claims that there has been no attempt on its
part to mislead or to confuse or deceive anyone, and that no
fraud or unfair competition has been shown as against the de-
fendant.    The defendant denies the right of plaintiff to the use
of the words ''safe-cabinet'' as a trade-name, claiming that such
a name is merely descriptive of the characteristics of the article,
and that no one can acquire exclusive right to such a trade-name,
and therefore claims the right to use the words in the manner in
which it has been using them, to-wit, ''cabinet safe.''

Counsel for defendant admits, however, that grammatically
construed these words would appear to have the same meaning,
arguing that the first word should be taken as the adjective or
qualifying word and the last word as the noun; that in the
name used by the plaintiff ''safe-cabinet'' the cabinet would
be the main feature qualified by the word ''safe,'' while in the
term used by the defendant ''cabinet safe'' the safe would be
the main feature qualified by the word ''cabinet.''    It is hardly
necessary to analyze the meaning of the words as has been done
by counsel for defendant, as such analysis shows no difference in
their meaning.    It might, however, be noticed that their use
by the plaintiff was with the hyphen between the two words,
using therefore both words as nouns and neither as an adjective,

indicating in that way possibly the name of a particular thing that combines in an equal degree the qualities of the object known as a cabinet with the object known as a safe.

The evidence shows that the words had not been used together in such a way as to become known to the trade or to indicate any particular article, prior to their use by plaintiff or its predecessor. In this view of the facts it appears to the court that the name is one which might well be adopted and used by the company which first manufactured such an article, and that its subsequent use by a new competitor would be looked upon at least as a ground of suspicion, and taken in connection with other matters might lead to a finding of unfair competition.

It is contended also by the defendant and shown by the evidence that the use of olive green paint as a decoration for steel articles was a matter that had been common to the trade for many years, and defendant contends that because plaintiff and its predecessor had originally used other colors as well as that finally adopted by it as its standard that therefore there could be no objection raised by it or any claim made as to its exclusive right to use the color, which the evidence shows it has adopted and used as its standard some time before the defendant entered the field of competition.

It may be well said that no one can have an absolute monopoly of a particular color, but it has been shown by the evidence that prior to the commencement of the manufacture of the ''Globe safe cabinet'' by defendant, its standard color for file cases and other products had been colors in imitation of finished oak or mahogany wood, and for steel file cases that were not so colored it had used a maroon paint, and had been using other colors only on special orders.

These facts taken in connection with the fact that it disregarded its previous standards of wood imitations and made olive green its standard color for its new product, with gold or yellow lines to imitate paneling, and the fact that in its catalogue of new goods it carried on the margin a miniature safe-cabinet, or cabinet safe, printed in green ink, making its catalogue similar to that of plaintiff company, and also that it took as the size of its

product the most popular size that was used by the plaintiff company, shows too many matters of similarity to be altogether accidental and not to show that it was actuated by the desire to gain the benefit of the expense and effort that had been borne by plaintiff in stimulating and creating a market for its product.

The court is compelled to reach the conclusion that the defendant has been guilty of those acts which constitute unfair business competition, especially when it is further considered, as shown by the testimony of the president of the plaintiff company, that prior to the commencement of the manufacture of its cabinet safe, a safe-cabinet manufactured by the plaintiff was purchased by the defendant and was taken to its factory and dissected by its operatives with instructions from the president of the company to manufacture an article as near like it as possible, in such a way as to take in the file case units made by the defendant, and not to infringe on the patent of the plaintiff company.

Such a conclusion is further sustained by the fact that the evidence shows that agents who had been previously handling goods manufactured by both plaintiff and defendant were required by defendant to handle its goods alone, and to give up the agency for the plaintiff's goods or to lose the exclusive agency for the defendant's goods.

The case of *Yale & Towne Mfg. Co.* v. *Alder,* 154 Fed. Rep., 37, is almost directly in point, the facts being so similar. The syllabus of this case is as follows:

"A manufacturer of locks who deliberately and intentionally copied a higher-priced lock made by another manufacturer in form, size, coloring, lettering and details of finish, so that the two were substantially identical in appearance to a casual observer, and retail purchasers were likely to mistake one for the other, is chargeable with unfair competition, although the parts of the lock separately may have been open to his appropriation."

Upon an ocular inspection by the members of the court, the similarity of the appearance of the two articles made respectively by plaintiff and defendant and shown as exhibits in court was sufficient almost of itself to convince the court that one was a

"Chinese" copy of the other. While if critically examined together points of difference might be discovered, it would be impossible for anyone not having first so studied them and memorized these differences, to properly describe them and identify the product of either party with that of the other party not then before him.

On such a state of facts it is clear that the casual ordinary buyer at retail, not having both articles before him and not knowing the points of difference or, possibly, even that there are two distinct manufacturers, but having read plaintiff's advertisements and having decided to buy a safe-cabinet would easily be induced to buy defendant's cabinet safe, feeling that he was securing what he had intended to purchase.

The plaintiff contending that the similarity of the two products is sufficient to confuse or deceive purchasers, defendant undertook to point out certain differences. For instance, that the plaintiff's article had a cornice around the front and both sides at the top, while defendant's has none at the sides because of its desire to carry out its idea of elastic furniture by adding, if occasion demands it, other cabinets at the side without leaving any space between the two. This furnishes a reason for omitting the cornice at the sides, but does not give a reason why when omitted the cornice on the sides it should be still retained on the front.

A difference in the hinges was also referred to by one of defendant's witnesses, but when he was asked to explain wherein the difference lay he was unable to do so without again referring to them and then making comparison between the two articles then in court. And the court was impressed with an incident which took place during the argument, when counsel for defendant undertook to point out the difference between defendant's article and that of plaintiff in court, and himself pointed out plaintiff's article as the product of defendant. If such confusion could arise with a witness and counsel, who had both prepared for trial and were clearly advised of all points of difference in the two articles, how can it be said that no confusion or deception will arise with the ordinary casual purchasers in

the market. who after all are the persons to be protected, and whose trade plaintiff is entitled to receive if he has legitimately secured it.

In the case at bar it is clear that the demand for plaintiff's goods was created before the defendant entered the field, and being in a similar business this demand was brought to the attention of the defendant by its agents and salesmen, and it did not hesitate to at once take advantage of the opening thus created to embark in the same business that had been made so successful by the plaintiff. We have stated above how the defendant first dissected the safe-cabinet of the plaintiff and commenced the manufacture of its cabinet safe in close imitation of it. While the defendant strenuously insists that its article is superior to that of the plaintiff, the plaintiff as strongly contends that its own article is the superior. For the purposes of this case, which is the better is not material. The real question becomes, who was the pioneer in this manufacture? There is no dispute in the record but that the plaintiff had an established business before the defendant commenced, and there can be no question but that the marked similarity of defendant's product was for the purpose of availing itself of plaintiff's trade and securing a part of its good will, and that the conduct of the defendant comes within what is known as unfair competition.

Defendant, however, contends that it has put out no goods except with the name "Globe" upon them, that is, the name-plate carries the words "Globe Safe Cabinet." Such use of defendant's name is not in itself a sufficient affirmative distinction where, as here, there are sufficient points of similarity to constitute unfair competition.

In *Menendez* v. *Holt*, 128 U. S., 514, the Supreme Court says in its opinion, at page 521:

"It is no answer to their action to say that there was no invasion of that right because the name of S. O. Ryder accompanied the brand upon flour sold by appellants, instead of the name of Holt & Co. That is an aggravation and not a justification, for it is openly trading in the name of another upon the reputation acquired by the device of the true proprietor."

See also to the same effect: *Shaver* v. *Heller,* 108 Fed. Rep., 821; *Jacobs* v. *Beecham,* 221 U. S., 263; *Rushmore* v. *Manhattan S. & S. Wks.,* 163 Fed. Rep., 939.

*Enterprise Mfg. Co.* v. *Landers,* 124 Fed. Rep., 923:

"Any manufacturer has the right to copy an article made by another which is not protected by patent, but he has not the right to so imitate it in shape, design, color and number as to deceive purchasers of average intelligence and cause them to mistake his product for that of the prior manufacturer."

*28 A. & E. Enc.* (2d Ed.), 410:

"An exact copy of another's trade-mark or name or the dress of his goods is not necessary to constitute infringement or unfair competition. Similarity, not indentity, is the test. There is some little confusion in the cases as to the standard to be applied, but the general rule seems to be that infringement or unfair competition exists whenever the resemblance is so close that ordinary purchasers, buying with ordinary caution, are likely to be misled. The resemblance need not be sufficient to deceive experts or persons specifically familiar with the trademark or goods involved, nor such as would deceive persons seeing the two trade-marks or articles placed side by side. A similarity sufficient to make it likely that unwary purchasers will be deceived, has been deemed sufficient."

*38 Cyc.,* 779:

"No inflexible rule can be laid down as to what conduct will constitute unfair competition. Each case is in a measure a law unto itself. Unfair competition is always a question of fact. The question to be determined in every case is whether or not, as a matter of fact the name or mark used by defendant has previously come to indicate and designate plaintiff's goods, or, to state in another way, whether defendant, as a matter of fact, is by his conduct passing off his goods as plaintiff's goods, or his business as plaintiff's business. The universal test question is whether the public is likely to be deceived."

*38 Cyc.,* 783, 784, 785:

"It is often said that a fraudulent intent on the part of defendant to pass off his goods or business as and for that of

plaintiff is necessary to constitute unfair competition, and infringement of trade-marks has been distinguished upon this ground. But the reasons for not requiring proof of a fraudulent intent in cases of infringement of trade-marks apply equally well to unfair competition cases, for the basis of the remedy is substantially the same in both cases. Unfair competition involves trading upon another's reputation and good will, and the injury is the same regardless of the intent with which it is done. Accordingly the better view is that an actual fraudulent intent need not be shown where the necessary and probable tendency of defendant's conduct is to deceive the public and pass off his goods or business as and for that of plaintiff, especially where only preventive relief against continuance of the wrong is sought or granted. Even if the resemblance is accidental and not intentional, plaintiff is entitled to protection against its injurious results to his trade."

*38 Cyc.,* 789-90-91:

"It is the duty of a subsequent trader coming into an established trade not to dress up his goods or market them in such a way as to cause confusion between his goods or business and that of a prior trader. Even conceding that the later trader has an equal abstract right to use particular words, names or marks, yet if his unexplained use of them will cause confusion and deception, he must accompany such use with affirmative distinguishing features sufficient to render deception improbable. This rule applies to all classes of names, including descriptive, generic, personal and geographical names, which, although primarily *publici juris,* have acquired a secondary meaning. Where a name has acquired a secondary meaning and come to indicate the source of particular articles, the mere use of such a name by another, unaccompanied by adequate distinguishing statements, in itself amounts to an artifice calculated and intended to deceive, and constitutes unfair competition.

"It is a question of fact in each case whether or not the goods or business of the subsequent trader have been so distinguished as to prevent any actual or probable confusion and deception. All the circumstances of the particular case must be considered. It is presumed that the public uses its senses and takes note of differences which are thus disclosed. But on the other hand it must be remembered that similarity, not identity, is the usual recourse when one party seeks to benefit himself by the good name of another so that the mere existence of differences does not necessarily show honest and sufficient differentiation. A nice

discrimination is not to be expected from the ordinary pur-chaser. Although differences between the respective labels and packages exist, and are readily apparent upon comparison, yet if the ordinary purchaser is liable to be deceived by the similar-ities which also exist, an injunction will be granted. Where the distinctive part of a name or mark is taken, minor differences afford no defense. Similarity in the main distinguishing fea-tures will usually be sufficient to constitute infringement or unfair competition.''

While the subject of trade-names and unfair competition is not altogether new, it has not arisen as frequently in the courts of Ohio as in those of many other states, yet in the federal courts and in England the cases are numerous and the doctrine has become well settled.

In our Supreme Court it was considered in *Brill* v. *Singer Mfg. Co.*, 41 O. S., 127, where the court found the facts did not make out a case of unfair competition. In the later case of *Drake Medicine Co.* v. *Glessner*, 68 O. S., 337, the question is well considered, and the opinion by Davis, J., shows that the law of Ohio in regard to this subject is in accord with that of the federal courts and the other states. This case upheld the rule that if the simulation is clearly shown, positive proof of fraudu-lent intent is not required, but may be presumed; that if the similarity be such that persons exercising ordinary caution are liable to be misled into purchasing one article when they intended to purchase the other an injunction will be allowed.

The case of *French Bros. Dairy Co.* v. *Giacin*, decided by the court of this circuit, reported in 12 C.C.(N.S.), 134, affirming the lower court decision found in 8 N.P.(N.S.), 549, involves this doctrine. It was affirmed by the Supreme Court without re-port, 84 O. S., 483.

The following nisi prius decisions also discuss the subject: *Backus Oil Co.* v. *Backus Oil & Car Grease Co.*, 5 Bull., 546; *Richardson* v. *Westjohn*, 6 Bull., 233; *Cohn* v. *Kahn*, 8 Bull., 154; *Lloyd* v. *Merrell Chemical Co.*, 25 Bull., 319; *Reeder* v. *Brodt*, 6 O. D., 248; *Feder* v. *Brundo*, 8 O. D., 179; *Cincinnati Vici Shoe Co.* v. *Cincinnati Shoe Co.*, 8 O. D., 579; *Ironside* v. *Ironside Chemical Co.*, 14 O. D., 193.

It is not necessary to refer at length to the numerous cases cited by plaintiff and defendant. The objection made by defendant that many of plaintiff's cases are where a registered trade-mark was being used and therefore did not apply, is not well taken, as the difference between the cases of the registered or technical trade-mark and cases merely of trade-names is in regard to the manner of proof—fraud being presumed in the first class of cases, while it must be proved in the latter class. The existence of infringement or unfair competition as dependent on the sufficiency of the resemblance between the name, ensemble and the goods of the respective parties is a question of fact to be determined upon the evidence in each particular case.

It is determined by this court that the court below committed error in finding for the defendant and in entering a decree dismissing plaintiff's petition.

The judgment is therefore reversed and a decree will be entered in this court granting the injunction as prayed for in plaintiff's petition.