**SOCONY–VACUUM OIL CO., Inc., v. OIL CITY REFINERS, Inc., et al.**

**OIL CITY REFINERS, Inc., v. SOCONY–VACUUM OIL CO., Inc.**

Nos. 9335, 9336.

Circuit Court of Appeals, Sixth Circuit.
June 22, 1943.

C. W. Sellers, of Cleveland, Ohio
(Thompson, Hine & Flory, of Cleveland,
Ohio, Frank E. Lewellen, of Detroit, Mich.,

and John J. Manning, of New York City, on the brief), for Socony-Vacuum Oil Co.

Albert R. Teare, of Cleveland, Ohio (Bates, Teare & McBean, of Cleveland, Ohio, on the brief), for Oil City Refiners.

Before ALLEN, HAMILTON, and MARTIN, Circuit Judges.

HAMILTON, Circuit Judge.

These are appeals from a judgment of unfair competition growing out of the use of conflicting trademarks. The questions presented are: First, whether the second user of one of various trademarks and composites of such trademarks sporadically used by the first user may be enjoined from competing with the latter; second, whether the court applied an erroneous conception of pertinent law in finding as a fact that the Oil City Refiners, Inc., appellee in No. 9335, changed the coloring and design of its trademark knowingly and in bad faith, thereby seeking to profit by inducing the public to purchase its wares under the belief they were the goods of the Socony-Vacuum Oil Company, appellant in No. 9335; third, assuming that the court correctly applied the law, was its remedy adequate?

The court referred the whole case to a Special Master to take testimony and report findings of fact and conclusions of law. On exceptions, the Master's findings of fact were approved, but the court rejected his conclusions of law in one particular. We shall refer to appellant in No. 9335, plaintiff below, as "Socony" and appellee in No. 9335, defendant below, as "Oil City."

The Patent Office issued a certificate of trademark registration No. 83,100 to the Standard Oil Company of New York, predecessor of Socony, exemplified in the symbol of a flying horse in combination with the words "Pegasus Brand." In the original registration statement, dated August 15, 1911, the applicant declared it theretofore had used the mark in the sale of naphtha and gasoline, oils and greases. Certificate of renewal was issued July 28, 1931. On August 6, 1931, an additional certificate of registration, No. 287,746, was duly issued to Socony's predecessor, extending the original mark to all of its petroleum products with or without admixture of other materials.

The Socony and its predecessor used the registered mark from 1911 to 1932 only in the sale of products in foreign commerce. In April of 1932, Socony planned to use the mark wherever it sold its products in the United States and during that year had shield signs manufactured for display at gasoline stations bearing the mark of the flying red horse. These signs were first used in Cleveland, Ohio, in March 1933. Beginning in August 1932, Socony's products were widely advertised under this trademark.

The first advertisement appeared in Cleveland, Ohio, October 4, 1932, and from that time to the trial of this case, Socony extensively advertised and sold its products under its trademark by the use of various media, including the radio, newspapers and magazines.

The Master found that Oil City used as a trademark the symbol of a flying horse in the Cleveland, Ohio, trade territory as early as 1930, which use it continued until October 1934, when it commenced marketing the products of the American Oil Company and continued to use that Company's trademarks and symbols, until September 1935, during which period it made but slight use of the flying horse. The horse on the Oil City's mark was usually white imposed on a dark background, although occasionally it used other colors, among them, red. Prior to December 1931, there was little use by Oil City of a single horse but the symbol sometimes had two horses facing in opposite directions. Prior to October 1932, and subsequent thereto Oil City intermittently used the figures of airplanes, a herd of running horses without wings, a quartet of singers and a series of flying horses in varying colors ascending in an arc. The use of a red horse during this period was sporadic. From April 1934, to September 1935, Oil City operated twenty-two gasoline stations, most of which were devoted to the sale of the American Oil Company's products under that Company's trademark. Between September and the latter part of 1935, Oil City distributed the products of the Columbia Refining Company through twelve of Oil City's stations using, in connection therewith, Columbia trademarks. Prior to 1940, Oil City sporadically used the sign of a white horse on billboards and cut-out signs, one of which had on it a gray horse with red outlined wings and it used a red horse on some of its pump globes. During 1940 and since that time the Oil City has used exclusively, a red horse strikingly similar to Socony's. Socony was familiar with Oil City's trade symbols as early as January 1933 and since that time has known the

uses to which they have been put. Oil City first knew of Socony's use of its trade symbol in October 1932.

On March 19, 1940, after this action was begun, Oil City registered the flying red horse as a trademark in Ohio under the provisions of the Ohio General Code, Section 6240, subsections 1–4.

On January 19, 1933, Oil City notified Socony that it was the sole owner of the winged horse trademark and insisted that Socony discontinue its use. Socony instituted this action claiming it was the owner of the mark and had used it continuously since October 22, 1932, in marketing its products in Ohio and elsewhere. It charged that Oil City was using Socony's mark in northeastern Ohio and in western Pennsylvania. Oil City, in its answer, admitted the sale of petroleum products in northeastern Ohio under the trademark of a flying red horse, but denied it had sold any products in western Pennsylvania. It charged Socony had sold products throughout the State of Ohio and counterclaimed, alleging it was the sole owner of the mark and sought an injunction and an accounting from Socony.

The Master concluded as a matter of law that Socony acquired no rights in the use of its trademark in the Cleveland trade territory until 1932 and that Oil City had made sufficient use of the mark of a flying horse to acquire a prior right therein before Socony entered the territory. The Master also concluded that the difference in color between a flying red horse and a flying white horse was not sufficient to avoid confusion in the public mind, but he concluded that because Oil City had in 1940 discontinued the use of all trademarks except a flying red horse, confusingly similar to the trademark of Socony, it was guilty of an unfair trade practice and should be permanently enjoined from the use of said mark. The Master recommended that there be no accounting, and that Oil City's counterclaim be dismissed and Socony's action be dismissed as to John Roski, appellee in No. 9335.

The court accepted the Master's findings and conclusions with the exception that he refuses to enjoin the Oil City from the use of a flying white horse as a symbol in the State of Ohio.

Oil City, appellant in No. 9336, insists that the court erred in dismissing its counterclaim. Socony in No. 9335 insists that the court should have enjoined the

Oil City from using the trademark in any form and further that in any event, the use of the mark by Oil City should have been restricted to Cleveland, Ohio, and its vicinity.

The Master found that Oil City was the first user of the flying horse as a trade symbol in the Cleveland territory and the court adopted this finding.

Under Rule 53(e) (2), Rules of Civil Procedure, Title 28 U.S.C.A. following section 723c, the court should accept the Master's findings of fact unless clearly erroneous. Socony filed no exceptions to the Master's report and since the findings of the Master in this particular are supported by substantial evidence, we accept them.

If nothing else appeared in the case, this finding would be sufficient to support Oil City's counterclaim and it would be entitled to an injunction against Socony, but even though Oil City was the first user of the trademark, it is not thereby relieved of the charge of unfair competition and if this charge is supported by the findings of the Master, the court was correct in dismissing its counterclaim. Drake Medicine Co. v. Glessner, 68 Ohio St. 337, 67 N.E. 722; Globe-Wernicke Co. v. Safe-Cabinet Co., 92 Ohio St. 532, 112 N.E. 478; Safe-Cabinet Co. v. Globe Wernicke Co., 3 Ohio App. 24; Pillsbury-Washburn Flour Mills Co. v. Eagle, 7 Cir., 86 F. 608, 41 L.R.A. 162; Samson Cordage Works v. Puritan Cordage Mills, 6 Cir., 211 F. 603, L.R.A., 1915F, 1107. According to the findings of the Master the confusion which Oil City seeks to abate was of its own creation and it caused the unfair competition in trade for which it asks relief. There was no finding by the Master of unfair competition by Socony and Oil City makes no claim of unfair dealing by Socony, aside from technical trademark infringement.

Rule 53(e) (2) does not operate to relieve this court of the burden of reviewing inferences or conclusions drawn by the Master and the trial court that the use by Oil City of the flying horse symbol to identify its trade and products constituted unfair competition. While accepting the facts competently found by the Master as correct, an appellate court remains free to draw the ultimate inferences and conclusions which, in its opinion, the findings reasonably induce. Kycoga Land Co. v. Kentucky River Coal Corporation, 6 Cir., 110 F.2d 894.

■ The possessor of a trademark has no more right than other property owners to use it for the purpose of passing off, or attempting to pass off, on the public the goods or business of one person as and for the goods and business of another. The facts found by the Master show that long before Socony entered the State of Ohio, Oil City was using the symbol of a flying horse, but it did not confine itself to any particular color, nor to a single horse. It used horses in groups facing in opposite directions with or without wings and in some instances moving in an arc and for long periods of time, it made but little use of a horse or horses as trade emblems. Socony commenced business in Ohio in 1932 and expended large sums in advertising its products under the trademark of the flying red horse and it operated many oil stations using this trade emblem as identification of its products and the places where they were sold.

After eight years of Socony's business activities in this territory, Oil City commenced to use exclusively a trade emblem which is indistinguishable by the ordinary observer from Socony's which emblem Oil City registered in the State of Ohio after this action was begun. Color is frequently an important factor in determining the question of unfair competition. Hugo Stein Cloak Co. v. S. B. Stein & Son, Inc., 58 Ohio App. 377, 16 N.E.2d 609; Black & White Taxicab Company v. Goldstein, 20 Ohio N.P.,N.S., 599, 29 Ohio Dec. 82.

There is no finding of fact by the Master that any customer of either of the parties was misled into believing he was acquiring the products of the other, nor is there any direct evidence that Oil City by its conduct deliberately intended to appropriate the business of Socony. The conclusion of the Master that Oil City appropriated the business of Socony rests on an inference.

■ Presumptions of fact which the law recognizes must be immediate inferences from the facts proved and must be such as sensible men influenced by observation, experience and reason, would draw from clearly established facts. As we view it, the facts found by the Master give rise to a strong presumption that Oil City refined its trademark and chose its color to resemble more closely the Socony's and resumed its use for the purpose of appropriating a part of the business of Socony. Under such circumstances, we do not feel justified in substituting our judg-ment for that of the Master and the trial court. Elgin Nat. Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 674, 21 S.Ct. 270, 45 L.Ed. 365.

■ In considering this issue, it is well to keep in mind the important distinction to be observed between the law of trademarks and that of unfair competition. Unlike the infringement of technical trademarks, unfair competition does not necessarily involve the violation of any exclusive right in the complainant to use the names and symbols employed by defendant. There may be unfair competition resulting from an unauthorized and improper use of such names and symbols although the complainant has no property right in them as a trademark. Any conduct designed and having a natural tendency to deceive the public and enable one man to dispose of his goods for those of another, may be unfair competition and may be enjoined, although it is not expressly shown that any particular person was thereby deceived. In cases involving technical trademarks, the fraudulent intent to deceive is presumed, while in cases of unfair competition complainant must prove this intent or show facts and circumstances from which it may reasonably be inferred. In its effort to prevent unfair competition the court should not lend its aid to the furtherance of perpetual monopolies. Shredded Wheat Co. v. Humphrey Cornell Co., 2 Cir. 250 F. 960.

■ Oil City, over the course of the years, has used various trade symbols. To permit it to select out of this group a single symbol and remodel it to resemble the mark of each new competitor entering the territory where Oil City is doing business, would broaden the scope of legitimate monopoly into the field of unfair trade.

The case of United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141, on which Oil City relies, has no application to the facts in the case at bar. In the cited case, the court decided that the junior of a trademark upon entering the business territory of the senior had no right to enjoin the latter, but was estopped to question the right of the first user. The court said in that case there was nothing to sustain the allegation of unfair competition, aside from the question of trademark infringement. The case of Hanover Star Mill. Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713, also cited by Oil City, lays down in part the same rule as the Rectanus case, but one

branch of the Hanover case is authority for the application of the doctrine of unfair competition to the conduct of Oil City in the case at bar.

■ Socony urges that under the findings of the Master, the trial court was compelled to enjoin Oil City from the use of a flying horse in any form or color as a trademark. As we view the case, this contention is untenable. The court and Master found that Oil City had a prior right in the Cleveland territory to the use of the flying horse as a trade symbol and Socony accepts this finding. To adopt Socony's claim would result in forfeiting property belonging to Oil City.

■ The substantive scope of an injunction in an unfair competition case is not subject to cut and dried rules. The extent of the relief depends entirely on the circumstances of each individual case. The rule is fundamental that the injunction should not be so broad as to operate oppressively or contrary to real justice. The great office of the writ is to protect and preserve rights and never to destroy contravening rights unless necessary.

Had Oil City been content to let its products make their own way under its trademark in the field of open and fair competition, that would have been the end of it, but it availed itself of unfair means, either expressly or tacitly, to sell its products to the ultimate purchaser as and for those of Socony. Nevertheless, Socony is entitled to such relief only as will tend reasonably to protect it against future unfair competition from Oil City. Socony is not entitled to the aid of a decree to create or support or assist in creating or supporting an unlawful monopoly in its behalf.

■ Socony also urges that the Master having found as a fact that Oil City had not extended the sale of its products under the trademark of a flying white horse beyond the trade territory of Cleveland, Ohio, that the court erred in decreeing that it could use throughout the State the trademark as described in the decree. This contention must be denied. It is true generally speaking that the proprietor of a trademark, good in the markets where the owners employed it cannot monopolize markets that its trade has not reached. In other words, the mark of itself cannot travel to markets where there is no article to wear the badge and no trader to offer the identified article for sale. However, in light of the well-settled rule that property in trademarks and the right to their exclusive use rests upon the law of the several states and depends upon them for security and protection, the use of the mark extends to the whole state unless the state has, by statutory or common law declaration reduced the territorial limits of the mark to a smaller area. Hanover Star Milling Co. v. Metcalf, supra (concurring opinion of Justice Holmes, 240 U.S. at pages 424, 426, 36 S.Ct. at pages 364, 365, 60 L.Ed. 713). The General Code of the State of Ohio, Section 6240-1 to 4 inclusive, provides for the registration of trademarks of statewide application. Under the laws of Ohio a valid trademark territorially extends to the entire state. Independently of the statute, the trademark of Oil City extended to the entire state under the rule laid down in the case of Western Oil Refining Co. v. Jones, 6 Cir., 27 F.2d 205. There this court was dealing with the trademark "Silver Flash" used in selling gasoline in the trade territories of Wellsville and East Liverpool, Ohio. We decided that the seller of the gasoline under the trademark in the two communities was entitled to the exclusive use of the name within the entire state as territory which may reasonably be anticipated to be within normal business expansion in view of modern transportation methods and that many persons came from a distance to purchase. See also White Tower System v. White Castle System, 6 Cir., 90 F.2d 67; Grocers Baking Co. v. Sigler, 6 Cir., 132 F.2d 498 and Hemmeter Cigar Co. v. Congress Cigar Co., 6 Cir., 118 F.2d 64.

■ The Master recommended that John Roski, appellee in No. 9335, be dismissed from the proceedings for failure of evidence, and the court confirmed him. Socony neither excepted to the Master's finding nor objected to the court's decree on this issue, but now urges that we reverse the judgment. We find it unnecessary to consider this point. The findings of fact by a Master cannot be reviewed upon appeal where there are no exceptions to his report and this is especially true where there are no objections to the court's approval of the Master's findings. Rule 53 (e) (2), Rules of Civil Procedure, Title 28, U.S.C.A. following section 723c; Coghlan v. South Carolina R. Co., 142 U.S. 101, 115, 12 S.Ct. 150, 35 L.Ed. 951; City of Cleveland v. Walsh Const. Co., 6 Cir., 279 F. 57; Hutchinson v. Fidelity Inv. Ass'n, 4 Cir.,

476

106 F.2d 431,. 133 A.L.R. 1061. Judgment affirmed on both appeals.

Socony and Oil City will each pay its own costs on these appeals and neither will recover any cost from the other. Appellee John Roski may recover his cost from appellant, Socony-Vacuum Oil Company.