NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2090
_____

UNITED ASSOCIATION OF JOURNEYMAN AND APPRENTICE PLUMBERS AND
PIPEFITTERS OF THE UNITED STATES AND CANADA LOCAL 74,

Appellant

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 313
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-12-cv-01060)
District Judge: Honorable Gregory M. Sleet
_____

Argued January 19, 2016

Before:  JORDAN, HARDIMAN, and GREENAWAY, JR., *Circuit Judges*.

(Filed: February 29, 2016)

Martin W. Milz [Argued]
Spear Wilderman
230 South Broad Street, Suite 1400
Philadelphia, PA 19102
        *Counsel for Appellant*

Claiborne S. Newlin

Meranze, Katz, Gaudioso & Newlin
121 South Broad Street
The North American Building, 13th Floor
Philadelphia, PA 19107

Robert F. O'Brien [Argued]
O'Brien, Belland & Bushinsky
1526 Berlin Road
Cherry Hill, NJ 08003
            *Counsel for Appellee*

_____

OPINION[*]

_____

HARDIMAN, *Circuit Judge*.

The United Association of Journeyman and Apprentice Plumbers and Pipefitters, Local 74 appeals the District Court's summary judgment in favor of the International Brotherhood of Electrical Workers, Local 313. The Court's summary judgment denied claims brought by Local 74 arising from a collective bargaining agreement (CBA) between Local 313 and Cushman and Wakefield, Inc. Because we agree with the District Court that the CBA requires Local 74 members to remit dues to Local 313, we will affirm.

I

Since 2004, members of both Local 74 and Local 313 have worked to maintain two commercial data centers in Delaware. The property manager, Cushman, has recognized only Local 313 as the employees' exclusive bargaining representative. Two

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

substantially identical CBAs executed in 2004 and 2008[1] nonetheless refer to Local 74 in two relevant clauses: a union security clause in § 7(1), and a dues checkoff provision in § 10(a). Section 10(e), an agency shop clause, is also pertinent to the parties' dispute.

Under the 2008 CBA, Cushman was obliged to deduct dues from members of both Local 74 and Local 313 in accordance with each union's bylaws. Thus, the company would take 5.25% from the wages of Local 74 members and 3.8% from the wages of Local 313 members, and remit the combined amount to Local 313. The electricians' union would then forward the dues collected from Local 74 members to the plumbers' union while keeping dues collected from its own members. This arrangement was copacetic to everyone until June 2011 when Local 313 began to keep 3.8% of the wages from *all* employees in the bargaining unit, irrespective of the union to which they belonged. Local 313 did continue to forward dues from Local 74 members over and above the amount it would have collected from them had they been members of Local 313 (*i.e.*, 1.45% of their wages).

The plumbers sued the electricians in the District Court alleging that Local 313 was in breach of the 2008 CBA, and that it was violating § 302 of the Labor Management Relations Act (LMRA) by collecting dues without written authorization from Local 74 members. The plumbers demanded money damages and an injunction. The parties filed

---

[1] The 2004 and 2008 CBAs were signed by Cushman's predecessors, EMCOR Facilities Services, Inc. and PM Realty Group LP, respectively. Upon becoming property manager of the data centers in 2009, Cushman assumed the terms and conditions of the 2008 CBA.

cross-motions for summary judgment, which were initially considered by a magistrate judge. Finding the language of the CBA ambiguous, the magistrate judge agreed with Local 74 and recommended summary judgment in its favor. The District Court disagreed, however, finding no ambiguity and holding that the terms of the 2008 CBA plainly and unambiguously required Local 74 members to pay Local 313 under the agency shop clause in § 10(e). Accordingly, the District Court ordered summary judgment for the electricians. Local 74 filed this appeal.

II[2]

Local 74's contract claim turns on the appropriate legal interpretation of the 2008 CBA. "We interpret collective-bargaining agreements . . . according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015). Our first task therefore is to determine whether the terms of the 2008 CBA are ambiguous. *See id.*; *see also* 11 Williston on Contracts § 30:4 (4th ed. 2015) ("It is a generally

---

[2] The District Court had jurisdiction over Local 74's claims under § 301 of the LMRA, which authorizes federal district courts to hear "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations" and grants district courts jurisdiction over labor organizations with either principal offices or agents residing within their territory. 29 U.S.C. §§ 185(a), (c). Section 302 also grants district courts jurisdiction "to restrain violations" of that section's prohibitions on certain financial transactions between employers and unions. 29 U.S.C. § 186(e). We have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's summary judgment, under the usual summary judgment standard. *Trenton Metro. Area Local of Am. Postal Workers Union v. U.S. Postal Serv.*, 636 F.3d 45, 52 (3d Cir. 2011).

4

accepted proposition that when the terms of a writing are plain and unambiguous, there is no room for interpretation or construction since the only purpose of judicial construction is to remove doubt and uncertainty.").

The agency shop clause in § 10(e) of the 2008 CBA provides:

> All employees covered by this agreement shall as a condition of continued employment, pay to the Union, the employee's exclusive collective bargaining representative an amount of money equal to that paid by other employees in the bargaining unit who are members of the Union . . . .

App. 31. Section 1 of the CBA defines "the Union" as Local 313. App. 26. Therefore, all employees in the bargaining unit must pay dues to Local 313 as a condition of their employment, irrespective of the union to which they belong.

Local 74 raises two arguments against this straightforward reading of the agency shop clause. First, it argues that this interpretation conflicts with the union security clause in § 7(1), which conditions employment on membership in "the Union"—*i.e.*, Local 313—but which also provides that "membership in good standing in [Local 74] . . . shall be considered as compliance with this provision." App. 27. Because compulsory membership for the purpose of union security clauses is "whittled down to its financial core," *e.g.*, *NLRB v. Gen. Motors Corp.*, 373 U.S. 734, 742 (1963), the plumbers argue that our straightforward interpretation of § 10(e) either requires an "illegal reading" of § 7(1) that mandates full membership, or renders § 7(1) superfluous since both it and § 10(e) are satisfied by the payment of dues. Local 74 Br. 21.

5

We disagree. The plumbers' assertion that our reading requires an illegal result is easily dismissed, and we find its superfluity argument unavailing. Both § 7(1) and § 10(e) effectively require only financial-core membership, and this requirement applies across the board not only to Local 74's members, but to Local 313's members as well. Thus, the clauses were redundant from the moment they were drafted because an employee could satisfy *both* the union security clause and the agency shop clause simply by paying financial-core dues to Local 313. This makes Local 74's resort to the canon against surplusage largely irrelevant because, however the CBA is construed, at least one of its provisions will be redundant.[3] *See Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1177–78 (2013); *Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004).

Second, Local 74 contends that the reference to its bylaws in the dues checkoff provision of § 10(a) modifies the agency shop clause in § 10(e) because "[f]or the purpose of *this provision*, the Bylaws of [Local 74] shall apply with respect to any of its members employed under this agreement." App. 30 (emphasis added). The emphasized portion, the union argues, is at least ambiguous with respect to the scope of the "provision" to which Local 74's bylaws apply, making § 10(e)'s meaning unclear. Even if we agreed that "this provision" encompasses § 10(e), the conclusion that the agency shop clause expands to permit payment of either Local 313's or Local 74's dues is a non

---

[3] Nor does our reading of § 10(e) do violence to the dues checkoff provision in § 10(a) because the reference to the unions' bylaws remains relevant to computing the amount Cushman is obligated to deduct from each employee's wages.

sequitur. To be sure, each employee in the bargaining unit remains bound by the bylaws of his or her respective union, but that obligation cannot alter the *employer's* contractual duties under § 10(e) to "the Union," *i.e.*, Local 313, and certainly does not create any such duties *between* the unions. *Cf. United Bhd. of Carpenters & Joiners of Am., Dresden Local No. 267 v. Ohio Carpenters Health & Welfare Fund*, 926 F.2d 550, 556–57 (6th Cir. 1991).

The remainder of Local 74's arguments require us to delve into extrinsic evidence to resolve the ambiguities the union has identified in the 2008 CBA. Because we agree with the District Court that the CBA is not ambiguous, that exercise is unnecessary.

\* \* \*

For the reasons stated, we will affirm the District Court's summary judgment.[4]

---

[4] To the extent that Local 313 retained dues without valid "written assignment[s]" from Local 74 members under § 302 of the LMRA, 29 U.S.C. § 186(c)(4)—an issue upon which we do not opine—money damages are not available under this section, *see, e.g.*, *Bakerstown Container Corp. v. Int'l Bhd. of Teamsters, Local 538*, 884 F.2d 105, 107–08 (3d Cir. 1989), and injunctive relief is a moot point because a new CBA executed in December 2011 no longer references Local 74. *See* Supp. App. 91–113; *see also Cushman & Wakefield Inc.*, 360 N.L.R.B. No. 10, at \*7–\*10 (Nov. 19, 2013)**.**

GREENAWAY, JR., *Circuit Judge*, concurring in the judgment in part and concurring in part.

I agree with the majority that Local 74's breach of contract claim fails. However, I write separately because I reach this conclusion on different grounds. Local 74 has failed to demonstrate that a valid contract existed between it and Local 313 as to the forwarding of deducted dues.[1]

The majority characterizes Local 74's breach of contract claim as "alleging that Local 313 was in breach of the 2008 CBA." Maj. Op. at 3. Accordingly, it proceeds to analyze whether Local 313 violated the CBA. In doing so, the majority overlooks both the language of Local 74's Complaint and "ordinary principles of contract law." Maj Op. at 4 (quoting *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015)).

Count I of the Complaint contains Local 74's allegations with respect to its breach of contract claim. *See* App. 316. The Complaint alleges that Local 313 had an "agreement" with Local 74 to "forward dues and fees deducted from Local 74 members' paychecks to Local 74." *Id.* The Complaint further alleges that "Local 313's departure from the longstanding practice of forwarding the appropriate amounts deducted from employee paychecks pursuant to their authorization and the collective bargaining agreement constitutes a breach of the *agreement between the two labor organizations*." *Id.* (emphasis added).

---

[1] I concur with the majority's opinion with respect to Local 74's LMRA § 302 claim that no remedy is available for any violation that may have occurred. *See* Maj. Op. at 7 n.4.

1

The language of the Complaint makes clear that Local 74 is alleging the breach of an "agreement between [Local 313 and Local 74]" about the forwarding of deducted dues by Local 313 to Local 74—not a breach of the CBA.  The CBA is not an "agreement between [Local 313 and Local 74]" and does not address the forwarding of deducted dues by Local 313 to Local 74.  In fact, the Complaint explicitly distinguishes between the CBA, which it states governs the *deduction* of dues by the employer, and the "agreement between [Local 313 and Local 74]" it alleges was breached, which it states governs the *forwarding* of those deducted dues by Local 313 to Local 74.[2]

Nor could the Complaint properly invoke the CBA as the contract that was breached.  Both the 2004 CBA and the 2008 CBA were signed only by the employer and Local 313, and, as such, Local 74 is not listed as a "party" to either CBA.  App. 2, 26.  As a non-party to the CBA, Local 74 plainly does not have standing to sue for breach of the contract unless it is a third-party beneficiary.  *See In re Stone & Webster, Inc.*, 558 F.3d 234, 241 (3d Cir. 2009) (citing *Guardian Constr. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378, 1386 (Del. Super. Ct. 1990)); 13 Williston on Contracts § 37:1 (4th ed. 2015).

---

[2] The majority's construction of the breach of contract claim to allege a violation of the CBA appears to be based on Local 74's construction of the claim in the District Court and on appeal.  *See, e.g.*, Pl.'s Mem. Supp. Mot. Summ. J. 1 ("This is an action by . . . Local 74 . . . to recover dues monies . . . seized without authorization by . . . [Local 313] . . . in violation of a collective bargaining agreement . . . ."); Local 74 Br. 2 ("Did the District Court err in its construction of the relevant language of the collective bargaining agreement?").

However, Local 74 may not argue a breach of contract claim that was not in its Complaint without amending its Complaint to allege such a claim.  And, of course, Local 74's argument in its summary judgment papers cannot effect an amendment to its Complaint.  *See Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996).

Thus, Local 74 argues, as it must, that it is a third-party beneficiary of the CBA. However, Local 74 has provided no argument in support of its purported third-party beneficiary status under the CBA beyond the conclusory allegation in its supplemental briefing that it is a third-party beneficiary. *See* Local 74 Suppl. Br. 2−3. Accordingly, any argument that Local 74 is a third-party beneficiary of the CBA has been waived. *See Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997); *accord Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 376 n.3 (5th Cir. 2003) (waiver of a third-party beneficiary argument).

Moreover, even if the argument were not waived, Local 74's claim to be a third-party beneficiary with standing to sue Local 313 under the contract would fail. It is axiomatic that a litigant may only sue a contracting party as a third-party beneficiary for the contracting party's breach of a promise it made in the contract. *See Triple C Railcar Serv., Inc. v. City of Wilmington*, 630 A.2d 629, 633 (Del. 1993) ("[A] third person, who is, in effect, a stranger to the contract, may enforce a *contractual promise* in his own right and name if the contract has been made for his benefit." (emphasis added)); Restatement (Second) of Contracts § 304 (Am. Law. Inst. 2015) ("A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty."); 13 Williston on Contracts § 37:1 (4th ed. 2015). An examination of the relevant provisions of the CBA—§ 10 and § 7—reveals that Local 313 makes no relevant promises in the CBA that it could have breached.

Section 10 of the CBA addresses the remittal of deducted dues by the employer to Local 313—not the forwarding of those deducted dues by Local 313 to Local 74. *See*

3

App. 30 ("*[T]he Company . . . agrees* to checkoff and remit to the Union dues and assessments of employees covered by this agreement pursuant to the following rules . . . ." (emphasis added)); *id.* (referencing the "*obligations of the Company* under this provision" (emphasis added)). Local 313 therefore does not make any promises in § 10 about the forwarding of deducted dues to Local 74.

Similarly, the union security clause in § 7(1) contains a promise made only by employees of the bargaining unit—not Local 313. *See* App. 27 ("*All present bargaining unit employees . . . shall remain* members of the Union in good standing as a condition of employment." (emphasis added)).

The CBA simply does not address the gravamen of Local 74's breach of contract claim: the fate of the deducted dues once the employer has remitted them to Local 313. As such, Local 313 makes no promises in the CBA about forwarding the deducted dues it receives from the employer to Local 74. Local 74 cannot claim to be a third-party beneficiary of the CBA entitled to sue Local 313 for breach of a promise that does not exist.

Thus, I cannot join the majority's opinion as it continues the fundamental error made by both the Magistrate Judge and the District Court in assuming that Local 74 has properly brought a claim for breach of the CBA. In my view, such a claim is foreclosed by the Complaint, Local 74's non-party status under the CBA, and the lack of any relevant promises in the CBA that Local 313 could have breached.

4

Rather, I would inquire as to whether the "agreement between [Local 313 and Local 74]" about the forwarding of deducted dues referenced in the Complaint does, in fact, exist. The resolution of this question is straightforward.

The only references in the record to any such contract between Local 313 and Local 74 are that such a contract does not exist.[3] *See* Suppl. App. 68 ("There was nothing in writing, no agreements, no reciprocals or anything between Local 313 and Local 74 as far as dues."); App. 231 ("There's no written agreement governing how much of the dues assessments should be remitted [by Local 313 to Local 74] . . . .").

Accordingly, I would affirm the District Court's summary judgment on the breach of contract claim on the basis that Local 74 has failed to identify the "agreement between [Local 313 and Local 74]" about the forwarding of deducted dues referenced in its Complaint.

---

[3] When pressed at oral argument, Local 74 argued for the first time in this litigation that an implied-in-fact contract existed between it and Local 313 as to the forwarding of deducted dues. At this late stage of the litigation, this new argument has been waived. *See Pichler v. UNITE*, 542 F.3d 380, 396 n.19 (3d Cir. 2008).