OPINION
{¶ 1} Plaintiffs-appellants, R.G. Engineering 
Manufacturing, et al., appeal a decision of the Columbiana County Common Pleas Court granting summary judgment to defendants-appellees, John Rance, et al.
 {¶ 2} Plaintiff-appellant, Robert E. Garrett (Garrett), owned and operated Garrett Technology, Inc. (GTI) which since prior to 1994 was in the business of designing coil processing equipment. Garrett decided to expand the business to include manufacturing and distribution of coil processing equipment. To that end, Garrett negotiated with defendant-appellee, John Rance, in March 1994 to join GTI. Rance had experience as a machinist and was able to build and market the coil processing equipment designed by Garrett. Garrett sold Rance one-half of his shares in GTI to Rance making them equal fifty percent shareholders. Subsequently, GTI did business as R.G. Engineering Manufacturing (R.G. Engineering) acting as a division of GTI.
 {¶ 3} In March 1997, Rance opened his own business, called Rance Industries (Rance Industries) next door to R.G. Engineering which performed fabrication services. Eventually, R.G. Engineering went out of business.
 {¶ 4} On May 26, 1999, R.G. Engineering and Garrett filed suit against Rance and Rance Industries.[1] The complaint set forth nine causes of action including breach of contract, tortious interference with contract and business relations, breach of fiduciary duty, unfair competition, fraud, conversion, and a request for a constructive trust. Garrett alleged that Rance used customer lists and pricing information obtained from R.G. Engineering and began diverting customers to Rance Industries. Garrett alleged that Rance would charge the customers the R.G. Engineering price then redirect the work back to R.G. Engineering paying a lower rate thereby recouping the profit that previously had gone solely to R.G. Engineering. Upon completion of discovery, Rance and Rance Industries moved for summary judgment and R.G. Engineering and Garrett responded in opposition. By way of judgment entries filed on April 12, 2001, and April 18, 2001, the trial court granted Rance and Rance Industries summary judgment on all claims. This appeal followed.
 {¶ 5} R.G. Engineering and Garrett (hereinafter collectively referred to as appellants) raise two assignments of error which state respectively:
 {¶ 6} "THE TRIAL COURT ERRED IN GRANTING JOHN RANCE'S MOTION FOR SUMMARY JUDGMENT WHERE THERE EXISTS GENUINE ISSUES OF MATERIAL FACT.
 {¶ 7} "THE TRIAL COURT ERRED IN GRANTING RANCE INDUSTRIES MOTION FOR SUMMARY JUDGEMENT [sic] WHERE THERE EXISTS GENUINE ISSUES OF MATERIAL FACT."
 {¶ 8} Appellants made numerous claims for relief in their complaint, including breach of contract, tortious interference with contract and business relations, breach of fiduciary duty, unfair competition, fraud, conversion, and a request for a constructive trust. On appeal, appellants do not address each specific claim and why summary judgment may have been inappropriate as to each specific claim. Rather, appellants' principal argument is that the trial court erred in disregarding certain documents that it attached to its brief in opposition to Rance and Rance Industries' (hereinafter collectively referred to as appellees) motions for summary judgment, namely R.G. Engineering's work log book and financial statements.
 {¶ 9} The log book recorded all contract machine work done by R.G. Engineering. Appellants argued that the log book illustrated how Rance Industries began to subcontract work obtained from former R.G. Engineering customers back to R.G. Engineering at a reduced rate. For example, from 1994 to 1996, the log book listed Butech as a recurring customer. However, beginning in 1997, when Rance began Rance Industries, R.G. Engineering's log book listed Rance Industries as the customer with a notation beside it that it was for Butech.
 {¶ 10} The financial statements purportedly reflect how R.G. Engineering's sales increased from year to year — $1,153,086.82 in 1995 and $1,437,275.84 in 1996. Then in 1997, appellants allege that the statements show that despite record sales of $2,068,874.66, R.G. Engineering suffered a loss of $39,470.73.
 {¶ 11} The trial court dismissed both the log book and the financial statements. As for the financial statements provided by R.G. Engineering's accountant, the court noted that they were neither certified or sworn to by the accountant. Regarding the log book, the court noted that there was no evidence as to who kept the log book, its accuracy, or if the material presented to the court by Garrett was in fact in the log book. The court also noted that Garrett did not keep the log book and did not produce the employee who did.
 {¶ 12} Civ.R. 56(E) provides in relevant part:
 {¶ 13} "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit."
 {¶ 14} Appellants attached the affidavit of Garrett to their brief in opposition to appellees' motions for summary judgment. In the affidavit, Garrett does make reference to the log books, but no reference to the financial statements purportedly prepared by R.G. Engineering's accounting firm. Neither the log book or the financial statements appear to comply with Civ.R. 56(E) evidentiary requirements. The photocopied sheets from the log book bear no markings or insignia which would indicate that they originated from R.G. Engineering. Although referenced by Garrett in his affidavit, he does not swear to or certify their authenticity. Likewise, no one swore to or certified the financial statements attached to the brief. In addition, there is no affidavit explaining the figures contained in those statements. If Rance and Rance Industries were indeed stealing customers away from R.G. Engineering, appellants failed to establish, through the use of the financial statements, any causal connection between the loss of customers to Rance Industries and the loss of profits.
 {¶ 15} Even if the log book and financial statements were considered proper summary judgment evidence, the premise underlying each of appellants' claims is faulty. This is illustrated by Garrett's own deposition testimony:
 {¶ 16} "Q What has Rance Industries, as a corporate entity, done to damage R.G. Engineering?
 {¶ 17} "A Like we said before, taking customers and redirecting the customers through Rance Industries and taking off basically the profit level off the top of the pricing then having us do the machine work at a lower rate.
 {¶ 18} "Q But that's not something that Rance Industries could force you to do was, it?
 {¶ 19} "A That's correct." (Garrett depo., p 79.)
 {¶ 20} Despite appellants' failure to separately address each of their claims, we will proceed to undertake the required de novo review of the case. Since both assignments of error involve similar issues of factual and legal analysis, they will be addressed together.
 STANDARD OF REVIEW {¶ 21} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. WillisDay Warehousing Co. (1976), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
 {¶ 22} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. * * *" (Emphasis sic.)Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
 {¶ 23} The "portions of the record" or evidentiary materials listed in Civ.R. 56(C) include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. The court is obligated to view all the evidentiary material in a light most favorable to the nonmoving party. Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317.
 {¶ 24} "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Dresher, 75 Ohio St.3d at 293.
 {¶ 25} Summary judgment is appropriate when there is no genuine issue as to any material fact. A "material fact" depends on the substantive law of the claim being litigated. Hoyt, Inc. v. Gordon Assoc., Inc. (1995), 104 Ohio App.3d 598, 603, citing Anderson v. LibertyLobby, Inc. (1986), 477 U.S. 242, 247-248.
 MISAPPROPRIATION OF TRADE SECRETS {¶ 26} Appellants argue that appellees used R.G. Engineering's customer lists and the associated pricing information to steal customers from them. Appellees argue that the customer lists and the associated pricing information do not constitute trade secrets.
 {¶ 27} The Ohio Uniform Trade Secrets Act, R.C. 1333.61 through1333.69, provides for civil remedies, i.e., injunctive relief and damages, for the misappropriation of trade secrets. R.C. 1333.61 defines "misappropriation" as follows:
 {¶ 28} "(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;
 {¶ 29} "(2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:
 {¶ 30} "(a) Used improper means to acquire knowledge of the trade secret;
 {¶ 31} "(b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;
 {¶ 32} "(c) Before a material change of their position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake."
 {¶ 33} That section also defines "trade secret" as:
 {¶ 34} "[I]nformation, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
 {¶ 35} "(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
 {¶ 36} "(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."
 {¶ 37} In addition, the Ohio Supreme Court in State ex rel. ThePlain Dealer v. Ohio Dept. of Ins. (1997), 80 Ohio St. 513, 524-525, set forth the following factors which should be considered in analyzing a trade secret claim:
 {¶ 38} "(1) The extent to which the information is known outside the business;
 {¶ 39} "(2) the extent to which it is known to those inside the business, i.e., by the employees;
 {¶ 40} "(3) the precautions taken by the holder of the trade secret to guard the secrecy of the information;
 {¶ 41} "(4) the savings effected and the value to the holder in having the information as against competitors;
 {¶ 42} "(5) the amount of effort or money expended in obtaining and developing the information; and
 {¶ 43} "(6) the amount of time and expense it would take for others to acquire and duplicate the information."
 {¶ 44} Applying the law to the facts of the present case, even when viewing the evidence in a light most favorable to appellants, no genuine issue of material fact remains as to appellants' claim for misappropriation of trade secrets. Appellants provided no evidence which demonstrated a transition of R.G. Engineering's customers to Rance Industries. Appellants provided log books from R.G. Engineering which reflect that Rance Industries began sending work to it. However, there was no evidence of who kept the log book or its accuracy. Also, appellants provided no evidence that the pricing information or customer list had independent economic values not generally known to other persons who could obtain economic value from its disclosure or use.
 {¶ 45} Even if R.G. Engineering's customer list and pricing information were considered trade secrets, appellants failed to establish that Rance acquired that information through improper means. By all accounts, Rance and Garrett were 50/50 partners, presumably giving them equal rights to that information. Also, Garrett opined that Rance did not take a written list from R.G. Engineering, but rather used only what he had remembered from the business.
 BREACH OF CONTRACT {¶ 46} In their brief in opposition to Rance's motion for summary judgment, appellants argued that Rance was an employee of R.G. Engineering and, therefore, subject to an implied employment contract. Appellants further argued that Rance's actions in misappropriating R.G. Engineering's customer lists was a breach of his employment contract with R.G. Engineering.
 {¶ 47} Applying the law to the facts of the present case, even when viewing the evidence in a light most favorable to appellants, no genuine issue of material fact remains as to appellants' claim for breach of contract. The parties acknowledge that they were 50/50 partners which undermines appellants' assertion that there was an implied employment contract. Even assuming there was an implied employment contract, there was no misappropriation of customer lists as already indicated.
 BREACH OF FIDUCIARY DUTY {¶ 48} In their brief in opposition to Rance's motion for summary judgment, appellants made no attempt to defend their claim of breach of fiduciary duty.
 {¶ 49} Regarding appellants' complaint for breach of fiduciary, their complaint states in pertinent part:
 {¶ 50} "As a director, officer and employee of RG Engineering, Defendant John Rance, had and owed a fiduciary duty to maintain in confidence all confidential and proprietary trade secret information of RG Engineering. He further had, and owed, a fiduciary responsibility and duty to RG Engineering not to utilize such information of RG Engineering, which information is now owned by RG Engineering, to RG Engineering's actual potential commercial disadvantage." (Complaint, p. 10, paragraph 57.)
 {¶ 51} In McConnell v. Hunt Sports Ent. (1999), 132 Ohio App.3d 657,687, explained a claim for breach of fiduciary duty as follows:
 {¶ 52} "A fiduciary has been defined as a person having a duty,created by his or her undertaking, to act primarily for the benefit of another in matters connected with such undertaking. Strock v. Pressnell
(1988), 38 Ohio St.3d 207, 216, 527 N.E.2d 1235, 1243. A claim of breach of fiduciary duty is basically a claim for negligence that involves a higher standard of care. Id. In order to recover, one must show the existence of a duty on the part of the alleged wrongdoer not to subject such person to the injury complained of, a failure to observe such duty, and an injury proximately resulting therefrom. Id." (Emphasis sic.)
 {¶ 53} Applying the law to the facts of the present case, even when viewing the evidence in a light most favorable to appellants, no genuine issue of material fact remains as to appellants' claim for breach of fiduciary duty. The only items Garrett asserted as trade secrets were the customer list and pricing information. As already indicated, these items were not trade secrets. A breach of fiduciary duty claim based on an alleged misappropriation of trade secret is dependent on the existence of a secret. Murray v. Bank One, Columbus N.A. (1990), 64 Ohio App.3d 784,790.
 FRAUD {¶ 54} In their brief in opposition to Rance's motion for summary judgment, appellants made no attempt to defend their claim of fraud.
 {¶ 55} Regarding appellants' claim of fraud, their complaint alleged that Rance made "certain representations and promises" to them in order to "induce" R.G. Engineering to hire him and enter into the business relationship. (Complaint, p. 14, paragraph 78.) Appellants alleged that they reasonably relied on those representations and were induced to hire Rance, that the representations were false, that Rance knew the representations were false, that the representations caused harm to appellants, and that Rance acted intentionally. (Complaint, p. 14, paragraphs 79-82.)
 {¶ 56} The elements of fraud are:
 {¶ 57} "(a) a representation or, where there is a duty to disclose, concealment of a fact,
 {¶ 58} "(b) which is material to the transaction at hand,
 {¶ 59} "(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
 {¶ 60} "(d) with the intent of misleading another into relying upon it,
 {¶ 61} "(e) justifiable reliance upon the representation or concealment, and
 {¶ 62} "(f) a resulting injury proximately caused by the reliance." Burr v. Stark Cty. Bd. of Commrs.
(1986), 23 Ohio St.3d 69, paragraph two of the syllabus.
 {¶ 63} Applying the law to the facts of the present case, even when viewing the evidence in a light most favorable to appellants, no genuine issue of material fact remains as to appellants' claim for fraud. The following deposition testimony of Garrett establishes this:
 {¶ 64} "Q Okay. You next claim is for fraud, and you testified earlier that the only representations that were made by John [Rance and others] came on to be employees of R.G. was that they had certain skills.
 {¶ 65} "A Correct.
 {¶ 66} "Q And did they, in fact, have the skills they represented they had?
 {¶ 67} "A Yes.
 {¶ 68} "* * *
 {¶ 69} "Q I'm going to read Paragraph 78. I'm just going to limit it to John. John Rance made certain representations and promises to plaintiffs in order to induce Garrett and R.G. Engineering to hire them and enter into a business relationship. So is there anything John misrepresented to you about his skills?
 {¶ 70} "A No.
 {¶ 71} "Q He could do all the things that he said he could do?
 {¶ 72} "A Yes.
 {¶ 73} "Q Okay. So then you do not have a claim for against John?
 {¶ 74} "A In that respect, no." (Garrett depo., 169-170.)
 TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS RELATIONS {¶ 75} Appellants argue that Rance Industries through Rance and others contacted R.G. Engineering's customers during their employment by R.G. Engineering and had orders directed from R.G. Engineering to Rance Industries. Appellees argue that none of the employees of R.G. Engineering, including Garrett and Rance, had employment contracts nor were any of them bound by non-competition agreements.
 {¶ 76} The elements of tortious interference with contract are "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." FredSiegel Co., L.P.A. v. Arter Hadden (1999), 85 Ohio St.3d 171, 176.
 {¶ 77} "The elements of tortious interference with a business relationship are (1) a business relationship, (2) the wrongdoer's knowledge thereof, (3) an intentional interference causing a breach or termination of the relationship, and (4) damages resulting therefrom."McConnell v. Hunt Sports Ent. (1999), 132 Ohio App.3d 657, 689.
 {¶ 78} Applying the law to the facts of the present case, even when viewing the evidence in a light most favorable to appellants, no genuine issue of material fact remains as to appellants' claims for tortious interference with contract and business relations. Of the former employees of R.G. Engineering who began working for Rance Industries, none had employment contracts and none were bound by non-competition agreements. Additionally, appellants have provided no evidence of business contracts in existence between R.G. Engineering and third parties.
 UNFAIR COMPETITION {¶ 79} Appellants argue that R.G. Engineering's customer list was used by Rance Industries to develop its business, constituting unfair competition. Appellees again point to absence of any employment contracts or non-competition agreements.
 {¶ 80} Unfair competition generally consists of representations by one person, for the purpose of deceiving the public, that his goods are those of another. Drake Medicine Co. v. Glessner (1903), 68 Ohio St. 337;Henry Gehring Co. v. McCue (1926), 23 Ohio App. 281. It is usually associated with patent infringements, unauthorized use of trade names, or trademark infringements. The concept may also extend to unfair commercial practices such as malicious litigation, circulation of false rumors, or publication of statements, all designed to harm the business of another. See Gehring, supra.
 {¶ 81} Appellants' complaint states in pertinent part:
 {¶ 82} "By reason of, and as a direct result of the acts of unfair competition, Defendants have benefits from their improper use of confidential and proprietary trade secret information. As a direct result of said unfair competition, Defendants have seriously damaged and continue to damage RG Engineering in an amount that is not presently ascertainable, but will be proved at trial." (Complaint, p. 13, paragraph 75.)
 {¶ 83} As stated earlier, appellants have failed to establish the existence of trade secrets. Further, no competent evidence has been presented which creates a question of fact as to whether appellees circulated false rumors, or published statements designed to harm appellant's business. Viewing the evidence in the record in a light most favorable to appellant, it is apparent that no genuine issue of material fact exists as to whether appellees engaged in unfair commercial practices such as malicious litigation, circulation of false rumors, or publication of statements designed to harm appellant's business. Under these circumstances, reasonable minds could only come to one conclusion and that conclusion is adverse to appellant. Appellees are properly entitled to judgment on appellants' claim of unfair competition against them as a matter of law.
 CONVERSION {¶ 84} Appellants made no attempt to defend their claim for conversion when it opposed appellees' motion for summary judgment.
 {¶ 85} Regarding appellants' complaint for conversion, their complaint states in pertinent part:
 {¶ 86} "John Rance and Rance Industries wrongfully obtained possession and exerted control over equipment and machinery owned by RG machinery.
 {¶ 87} "John Rance and Rance Industries benefitted from this wrongful conversion of RG Engineering assets." (Complaint, p. 15, paragraphs 94 and 95.)
 {¶ 88} In Tabar v. Charlie's Towing Serv., Inc. (1994),97 Ohio App.3d 423, 427-428, the court outlined the essential elements of conversion as follows:
 {¶ 89} "Conversion is the wrongful control or exercise of dominion over property belonging to another inconsistent with or in denial of the rights of the owner. Bench Billboard Co. v. Columbus (1989),63 Ohio App.3d 421, 579 N.E.2d 240; Ohio Tel. Equip. Sales, Inc.v. Hadler Realty Co. (1985), 24 Ohio App.3d 91, 24 OBR 160, 493 N.E.2d 289. In order to prove the conversion of property, the owner must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner. Id. The measure of damages in a conversion action is the value of the converted property at the time it was converted. Brumm v. McDonald Co. Securities, Inc. (1992), 78 Ohio App.3d 96, 603 N.E.2d 1141." See, also, Kraft Constr. Co. v. Cuyahoga Cty. Bd. of Commrs. (1998),128 Ohio App.3d 33, 41.
 {¶ 90} Applying the law to the facts of the present case, even when viewing the evidence in a light most favorable to appellants, no genuine issue of material fact remains as to appellants' claim for conversion. As pointed out by appellees, Garrett testified at his deposition that R.G. Engineering was legally dissolved in the fall of 1998 and that they mutually agreed upon a disposition of all of the property. (Garrett depo. pp 15-16.)
 {¶ 91} In sum, having reviewed the record and, upon consideration thereof and the law, it appears that there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the appellants, reasonable minds could only conclude that they have failed to support the necessary elements of each of their causes of action and appellees are entitled to judgment as a matter of law.
 {¶ 92} Accordingly, both of appellant's assignments of error are without merit.
 {¶ 93} The judgment of the trial court is hereby affirmed.
Vukovich, J., concurs.
Waite, J., concurs.
[1] Other named party defendants were subsequently voluntarily dismissed by R.G. Engineering and Garrett.