# Supreme Court Decisions.

## GENERIC, GEOGRAPHICAL AND PERSONAL NAMES IN TRADE-MARKS.

THE DRAKE MEDICINE CO. AND DRAKE V. GLESSNER.

Decided, May 19, 1903—68 Ohio State, p. 337.

*Generic, Geographical and Personal Names—May be Protected as Trade-marks, When—Where One Carries on Business in a Particular Name and Label—Another Can Not Lawfully Assume the Same, When—Questions of Originals and Imitations—Law of Trade-marks.*

1. In general, generic words, geographical names or the names of persons can not be valid trade-marks; but when a geographical name is not used to denote location, and it is used in a merely fictitious sense to indicate ownership and origin independent of location, it may be a good trade-mark; and the name of the inventor or original maker of an article of traffic, if not used in a way to deceive or defraud, will be protected as a trade-mark, and the right to use such trade-mark and to be protected therein, will pass by assignment.

2. The name "Dr. Drake's German Croup Remedy," so called because the manufacturer and vendor, the plaintiff, obtained the formula from one Dr. August Drake, a German physician, the remedy having been made and sold by the plaintiff for ten years before the remedy of the defendants was brought before the public, in the same place, is a good trade-mark; and the use of the words "Dr. Drake's Famous German Croup Remedy" by the defendants is an infringement thereof.

3. Where a person has established a business and reputation for the manufacture and sale of an article of traffic, under a particular name and style of label, whether the words and devices adopted by him constitute a trade-mark or not, another person, whether it be his own name or not, can not lawfully assume the same name and label, or the same with slight alterations, so as to induce the belief that the imitation is the original; and such use of such name and label will be enjoined on the ground of fraud.

Error to the Circuit Court of Hancock County.

The defendant in error commenced an action against The Drake Medicine Co. and Warren W. Drake, in the Court of Common Pleas of Hancock County, alleging as follows:

"Plaintiff says that he has for many years last past carried on the business hereinafter described under the name of The Glessner Medicine Co., of Findlay, Ohio; that he has complied with all the provisions of Section 3170, Revised Statutes.

"Plaintiff further says that the defendant, The Drake Medicine Co., is a corporation.

"Plaintiff says that he is and for many years has been the sole and exclusive owner of the medicine known and called 'Dr. Drake's German Croup Remedy,' and of the formula for making the same, and of the good will attached to said medicine, and the business of manufacturing and selling the same under the name aforesaid, and of certain trade-marks under which, and by means of which the medicine is known and sold, adopted by the plaintiff for that purpose in the year 1892, of which the following is a specimen, whereof is shown by exhibit attached hereto and made a part hereof.

"That the medicine is a valuable remedy for croup, whooping-cough, coughs, hoarseness, etc., and has been manufactured and sold as such by the plaintiff and his predecessors in the ownership of said medicine since prior to the year 1890 continuously to the present time, under and by the name of 'Dr. Drake's German Croup Remedy;' and by said name said remedy has become renowned and in extensive demand owing to its merits, and that much time and labor and money has been expended by plaintiff and his predecessors in the manufacture of said remedy, and in placing the same upon the market, and in advertising it, whereby a large and valuable trade in said medicine has been built up throughout the United States of America and the Dominion of Canada and elsewhere, and the business has yielded and still yields large profits and the trade-mark is of great value.

"The plaintiff further alleges that in addition to the name 'Dr. Drake's German Croup Remedy' as means of designating said remedy and of preventing the same from being confounded with other alleged remedies, the said plaintiff, in the year 1892, adopted as a further and additional trade-mark and designation of said remedy, a method of putting up said remedy. That the said remedy is enclosed in a bottle, which in turn is enclosed in a pasteboard box 6 1-2 x 2 1-8 x 1 1-8 inches, and around said box, and adhering thereto, is a wrapper or label of a peculiar red color, a copy of which wrapper is hereto attached, and marked Exhibit 'A,' and made a part of this petition.

"That notwithstanding the long and quiet use and enjoyment by the plaintiff of said name and trade-mark, the defendants well knowing the premises, but willfully disregarding the plaintiff's rights, thereafter and in January of the year 1901, wrongfully and

fraudulently prepared and offered for sale, and now does offer
for sale at Findlay, and elsewhere in the United States, an article
in imitation of the plaintiff's article which, with the intent to de-
ceive and defraud the public and buyers and consumers thereof,
they have caused to be put up in similar packages and labeled with
a nearly similar label, a copy of which false label is hereto at-
tached, marked Exhibit 'B,' and made a part hereof.

"That such imitation and the use of words 'Dr. Drake's German
Croup Remedy' and of the said wrapper is calculated to deceive
the purchasers and consumers of plaintiff's said article, and ac-
tually has and still does mislead many of them to buy the article
sold by the defendants, in the belief that it is the article manu-
factured by the plaintiff, greatly to the diminution of the said
business and profits of said plaintiff. That plaintiff only learned
of the acts complained of on, to-wit, the first day of October,
1901, and that before this action, and on the eleventh day of
October, 1901, the defendants were notified by plaintiff that the
assumption of the aforesaid trade-mark and label by the defend-
ants were misleading the public into believing that it was purchas-
ing plaintiff's article and remedy, and requested the said defend-
ants on said day to desist from the use of the plaintiff's trade-
mark and label, yet the defendants refused and still refuse to do so.

"Plaintiff further says that the defendant, Warren W. Drake,
has falsely and fraudulently given out by speech, act and written
advertisement, that he is the Dr. Drake who originated or pre-
pared the formula used in the preparation of plaintiff's remedy
hereinbefore described, when in truth and in fact the said defend-
ant, Warren W. Drake, did not originate or prepare the said for-
mula. That the alleged remedy of the defendants has been ex-
tensively advertised among wholesale and retail druggists, and
among other persons in the United States and elsewhere, including
customers of the plaintiff, and that thereby the defendants have
fraudulently sought to take away plaintiff's trade, and deprive it
of great profit, and to impose upon said persons and to make them
believe that the said alleged remedy of the defendants is the rem-
edy of the plaintiff; and divers and sundry persons, to the great
loss of the plaintiff, have thereby been deceived, and that the de-
fendants will continue their practice unless restrained by this court
from so doing, and thereby the plaintiff will suffer great loss and
irreparable damage.

"Wherefore, plaintiff asks the equitable interference of this court
to perpetually enjoin the defendants, and each of them, from using
and designating a remedy to be used for the cure of croup, whoop-
ing-cough, coughs, hoarseness, etc., by either the words 'Dr. Drake's
Famous German Croup Remedy,' or any other words resembling
the said words, in connection with a cure or remedy for croup,
whooping-cough, hoarseness, etc., either alone or in connection
with any other words purporting to describe the remedy for such
diseases, and from using the labels above described, and that the

defendants may be required by an order of this court to withdraw from the market any such packages as they have placed thereon, for sale by wholesale or retail druggists, or any other traders or dealers, and that until the final hearing of the case, the defendants, and each of them, be enjoined according to the prayer thereof, and for all other relief."

The defendants filed answer and cross-petition as follows:

"For answer to the petition of the plaintiff the defendants deny the same and each and every averment and allegation thereof except as hereinafter in their second answer and cross-petition is stated and alleged.

"And for their second, and by way of a cross-petition on behalf of the defendant, Warren W. Drake, that defendant says that for more than ten years last past this defendant has been, and now is, a practicing physician residing and so practicing in the city of Findlay, and in the cities and country contiguous thereto, and that during all of that time this defendant has been, and yet is, the only physician by his name either in said city, in the county of Hancock, or in the state of Ohio, so far as this defendant knows or has been able to ascertain.

"That some years ago, presumably at the date stated in the petition (1892), the plaintiff who theretofore had been a local reporter on a newspaper published by his brother in said city, promoted and eventually effected the formal organization of a corporation of which the plaintiff retained a controlling interest.

"That all of the incorporators resided in Findlay, but this defendant had no knowledge of the fact of such organization until some time after it commenced business, and this defendant at no time had any connection therewith or interest therein.

"That among the persons whom plaintiff succeeded in interesting in his schemes, was one John Weil, a practical druggist, and now residing in said city.

"This defendant was informed by said Weil, and verily believes and charges the fact to be, that in the organization of their said company, and when it came to the matter of a name for the new artificial hybrid in the world of *materia medica,* it was then settled and agreed by said plaintiff and Weil that it ought to be named after some reputable local physician, and that the corporation should be and was named 'The Drake Medicine Co. of Findlay, Ohio,' and the organization so named was incorporated under the laws of Ohio, and chartered in that name, to compound at Findlay, and put upon the market, proprietary medicines so-called in the name of The Drake Medicine Co.

"This defendant further complains that very soon after the organization of this so-called medicine company, the said druggist, Mr. Weil, formulated a theory, and theorated a formula for an alleged German croup remedy, which this alleged medicine com-

pany began compounding and palming off upon an unsuspecting community at large, and this so-called croup remedy they named 'Dr. Drake's German Croup Remedy,' and this they put upon the market under the very shadow of this defendant's domicile.

"This compound was quite extensively advertised by the plaintiff. It was put up in a label precisely like that of the plaintiff's Exhibit 'A,' except that the word 'Glessner,' in that exhibit, occupies the position assumed by 'Drake,' in the original label, and in this manner the whole public was given to understand and believe, that this defendant was the author of this formula, and responsible for this nostrum; and all this was so done by the plaintiff controlling the business, and without the knowledge or consent of this defendant, and greatly to his annoyance and to his irreparable injury in his profession and practice, in that he was annoyed by curious inquirers concerning his German croup remedy, and tabooed by his professional brethren for his public advertised connection with proprietary remedies, commonly called patent medicine.

"That it was some time after defendant began to be injured and announced in this manner, before defendant was able to find who or what it was that was persecuting him, by putting out this alleged medicine in his name and city, but finally learned that it was being so done by the plaintiff, in the name of the company he had so formed, to-wit, 'The Drake Medicine Co. of Findlay.'

"That upon learning the plaintiff's identity with the transaction this defendant in good faith went to his counsel, learned in the law, and stated the matter to him, and asked his advice and assistance to prevent the plaintiff from so putting out such patent medicine in this defendant's name and town, but defendant was then advised by his counsel that he could not enjoin the plaintiff from so doing and that being without remedy he must submit to the injury, and defendant says that from thence hitherto he has been a martyr to the plaintiff and his alleged 'Dr. Drake's German Croup Remedy,' prepared at Findlay, Ohio, U. S. A.

"After a time the plaintiff, Drake Medicine Co., disintegrated and as defendant is informed, surrendered its charter, and thereupon, or shortly thereafter, the plaintiff in order to pepetuate his scheme of public deception, formed himself into a partnership, a fictitious partnership, named the Glessner Medicine Co., of which he is all in all, and continues to put out this labeled Dr. Drake's German Croup Remedy in fraud of the public, and in gross violation of this defendant's rights.

"This defendant says that when he found that plaintiff had put him into the patent medicine business before the world, and that his attorney could not get him out, he organized the real only 'The Drake Medicine Co. of Findlay, Ohio,' defendant, and put upon the market a croup remedy of his own for which he is responsible, and of which formula he is the author, as he is advised and believes he has a legal right to do.

"That defendant's remedy, both upon the label and on the bottle, has the face photograph of this defendant, the author of the formula, and the remedy itself in no way resembles the counterfeit of the plaintiff, so put out in the name of this defendant.

"Wherefore, the defendants pray that the temporary injunction allowed herein be dissolved with a finding that plaintiff is not entitled thereto, and that the petition be dismissed at the cost of the plaintiff.

"The defendant, Warren W. Drake, prays that if it is in the power of this court that the plaintiff, in his own name or any name, be enjoined from putting out from the city of Findlay, while defendant continues to reside and practice medicine therein, an alleged Dr. Drake's croup or any other remedy, in the name of this defendant, or purporting to be defendant's remedies, and that defendant may have such other or further relief in the premises as equity and the nature of the case shall demand."

Thereupon the plaintiff filed reply, which is as follows: ,

"Now comes the plaintiff, and for his reply to the answer and cross-petition of the defendant, Warren W. Drake, filed in this case, says: That the second answer and cross-petition therein contained does not state facts sufficient to constitute a defense to the petition filed herein, nor does it contain facts sufficient to constitute a cause of action against the plaintiff, or to entitle the said defendant to the relief prayed for against this plaintiff.

"For further reply to the answer and cross-petition of the said defendant, Warren W. Drake, plaintiff says, that while he admits that the said defendant is now and has been for some years a practicing physician, residing and so practicing in the city of Findlay, plaintiff avers that said defendant is now, and for some years has been, engaged in vending and placing upon the market certain nostrums or so-called patent medicines of which he claims to be the proprietor, other than the croup remedy described and complained of in the petition filed herein, which later remedy he began placing upon the market in January, 1901, as averred in the petition.

"Plaintiff further says that he became the owner of the formula used in the preparation of the croup remedy described in the petition as belonging to him, and has ever since been, and still is, the sole owner thereof and of the right to use the same, and that in the year 1890 he began the manufacture and sale of the same, operating under the name of The Drake Medicine Co., at which time he adopted the trade-mark described and set forth in the petition herein; that he continued said business as an individual under the name of The Drake Medicine Co. until the year 1892, when an incorporated company was formed under the name of The Drake Medicine Co. to push the business of manufacturing and selling the said croup remedy, but that this plaintiff parted with

neither the formula nor the trade-mark in the petition described.

"Plaintiff admits that the incorporators in said company resided in Findlay, and that the defendant, Warren W. Drake, had no connection therewith.

"Plaintiff says that said incorporated company was in existence and operation for a few months only, when having failed to comply with its arrangements with him, the said company wholly abandoned the said business, and thereafter this plaintiff resumed his operations as an individual, under the name of The Drake Medicine Co., and so continued until the year 1897, at which time the defendant, Warren W. Drake, having theretofore entered in the patent medicine business as the Drake Chemical Co., the similarity of names led to confusion, and this plaintiff abandoned the use of the name, The Drake Medicine Co., began operation under the name of The Glessner Medicine Co., and has so continud to operate ever since.

"This plaintiff denies that John Weil was in any way connected with him in his operations, either under the name of The Drake Medicine Co., or under the incorporated company by that name or since.

"Plaintiff avers that the said John Weil neither originated the formula used in the manufacture of plaintiff's croup remedy, nor had he any part in the inception, conception, birth or christening of either company or the croup remedy, and that neither the company nor the remedy was named after or for the defendant, Warren W. Drake.

"Plaintiff says that he was, and is the owner of the formula which was prepared by a Dr. Drake, formerly a resident of the state of Iowa, long before he had ever heard of the defendant, and that he began the manufacture of this croup remedy before he knew the defendant. That in the year 1890, or shortly after he began operation under the name of The Drake Medicine Co., he advised the public by extensive advertisement in all the newspapers circulating in the city of Findlay and Hancock county, Ohio, and elsewhere, that the defendant, Warren W. Drake, was not the originator of the formula and was not connected in any way with the preparation, manufacture, or sale of the croup remedy of the plaintiff, and has at all times since, and at all proper occasions advised the public that the defendant, Warren W. Drake, was not in any way connected with either the preparation, manufacture, or sale of his said croup remedy.

"Plaintiff further avers, that the said defendant, in the same year, by like advertisement, advised the public that he was not connected in any way either with the original preparation, manufacture or sale of plaintiff's croup remedy.

"Plaintiff admits that the only change in the label used by him now and in 1892, and thereafter until 1897, is the substitution of the word Glessner for the word Drake, in the name of the medicine company.

"Plaintiff admits that the defendant's labels and bottles have the photograph of the defendant thereon, and that the defendant organized The Drake Medicine Co., of Findlay, Ohio, which is now operating and using the trade-mark and label described as Exhibit 'B' in the petition and of which complaint is there made, but plaintiff denies each and every allegation of the petition not herein admitted, and prays as in his petition."

The court of common pleas found the equities of the case with the plaintiff, dismissed the cross-petition of the defendant, Warren W. Drake, and decreed a perpetual injunction as prayed. On appeal to the circuit court that court also found in favor of the plaintiff, dismissed the cross-petition of Warren W. Drake, and granted a perpetual injunction in favor of the plaintiff, as prayed; and, on request, made the following special findings of fact and conclusion of law:

"First. At some time prior to the year 1892, the plaintiff, who is neither a physician nor pharmacist, obtained a formula for a croup remedy made and prepared by one Dr. August Drake, a German physician who formerly resided in the state of Iowa.

"That afterwards, an dabout 1890, the plaintiff began the preparation of a croup remedy, and began advertising and putting the same upon the market from Findlay, Ohio, in the name of The Drake Medicine Co., said medicine being, after the year 1891, put up and labeled in the manner and upon the label in all respects as described and copied into the petition and exhibit attached thereto marked Exhibit 'A' except that the word 'Drake' appeared where the word 'Glessner' now appears in the name of the company, by which said medicine was so being put out at Findlay, Ohio.

"Second. That in and about the putting out and advertising of said his 'Dr. Drake's German Croup Remedy,' in the manner and at the place aforesaid, the plaintiff expended a large amount of money, to-wit, about ten thousand dollars, and that in and about the conduct of his said business of putting out and vending his said 'Dr. Drake's German Croup Remedy,' plaintiff has between the time he commenced said business and the time of the commencement of this action, during all of which time he conducted said business, has built up a large and lucrative business, and the exclusive right and business of the plaintiff and the good will thereof, in this behalf, is very valuable, to-wit, of the value of ten thousand dollars and upwards.

"Third. That about the time plaintiff so began putting up and vending said croup remedy, to-wit, in 1892, he adopted as his trade-mark and label, the same trade-mark, to-wit, 'Dr. Drake's German Croup Remedy,' and his said label as attached to the petition, with the words and characters as they appear on said

Exhibit 'A,' as aforesaid, with the sole exception already indicated. During this time plaintiff changed his business name to The Glessner Medicine Co., and complied with the law in that behalf.

"Fourth. That during all this time the defendant, Warren W. Drake, was a practicing physician residing and practicing in Findlay, Ohio, and was, and yet is the only practicing physician by that name residing in said city. That that defendant never in any manner consented to this act or course of business conduct on the part of plaintiff, but on the contrary as soon as he learned who it was that was putting out such proprietary remedy in Findlay in his name, he consulted an attorney and sought to prevent the plaintiff from so doing. That he was advised by this attorney that he could not enjoin or prevent plaintiff from doing that business in that name.

"That about the first year, of the year 1901, the said defendant organized and promoted a corporation, the defendant, The Drake Medicine Co., and without the plaintiff's consent began putting out from Findlay an alleged croup remedy in the manner alleged in the petition and under the name and in the label a copy of which was attached to the plaintiff's petition and marked 'Exhibit B.'

"Fifth. That in adopting the label and in the manner of formulating their label and trade-mark, the defendants designed as nearly as possible to imitate plaintiff's trade-mark and label for the fraudulent purpose of deceiving the public, and defrauding the plaintiff as well, by causing it to be believed by the public that defendant's remedy was that of the plaintiff, intending thereby to profit by the good will of plaintiff's said business and the fame of his remedy with the trade and general public.

"Sixth. That the similarity in the labels and size, shape, color of the packages and general appearance of the defendant's remedy is such that it has a necessary tendency to, and does mislead and deceive customers and the general public, purchasing with ordinary caution, and in these respects, operates as a fraud upon the general public and the plaintiff, in respect to his property and proprietary rights in his said croup remedy and the good will of his said business.

"Seventh. That if the defendants are permitted to continue to put upon the market and vend their said croup remedy in the form, label and manner above described, in competition with that of the plaintiff, they will deceive the plaintiff's customers and the public, and thereby secure to themselves a large part of the favor and good will belonging of right to the plaintiff in his said business of vending his 'Dr. Drake's German Croup Remedy,' to the great and irreparable damage and injury of the plaintiff, in his said business and the good will thereof, for which the plaintiff would have no adequate remedy at law.

"Eighth. That plaintiff's said remedy is valuable, possesses inherent merit, and possesses valuable qualities and properties for

the treatment of croup, and the plaintiff never, in any manner consented to these acts on the part of the defendant so in violation of his property rights, but has always objected thereto, and began his action for the redress of his grievances when he learned the identity of the defendants.

"We find and hold as conclusion of law upon the facts above found, that the plaintiff has the exclusive right to put up and vend from the city of Findlay, Ohio, U. S. A., Dr. Drake's German Croup Remedy in the manner and form contained in his label, marked Exhibit 'A,' and that he has a valid, legal and exclusive right to his said trade-mark and label as his trade-mark for said croup remedy, and that the defendants have no right under the objection of the plaintiff to use or imitate said trade-mark or put up and vend their said croup remedy in their said label, marked Exhibit 'B,' in the manner as above found."

The petition in error in this court alleges that the findings of the court below were not sustained by the evidence and that the finding and judgment are contrary to law.

*Phelps & David,* for plaintiffs in error.

*Ross & Kinder,* for defendant in error.

DAVIS, J.; BURKET, C. J., SPEAR, SHAUCK, PRICE and CREW, JJ., concur.

The plaintiffs in error were defendants in the court of common pleas. Their defense in that court, and in the circuit court on appeal, as well as their contention on their petition in error here, is embodied in two propositions: (1) That the plaintiff has no trade-mark which can be protected under the law, and if he has such a trade-mark, the defendant's label and its use do not constitute an infringement of such rights; (2) That the plaintiff's conduct in the management of his business has been fraudulent as to the defendants and the public, so that he has no standing in a court of equity to complain of the acts of the defendants.

When viewed under the tests of a technical trade-mark, or trade-name, it may be conceded that there is ample ground for debate. The generic or merely descriptive term "Croup Remedy," standing by itself, would not be a trade-mark, and there are numerous cases in the reports in which it is held that a geographical name or the name of an individual it not a good trade-mark. And hence it may be plausibly argued, as it is contended in this case, that the plaintiff's alleged trade-mark, "Dr. Drake's German Croup Remedy," is not a trade-mark at all. On the other hand, there

are strong reasons and high authority for the contention that a geographical name when not used in a geographical sense, that is, when it does not denote the location of origin, but is used in a fictitious sense merely to indicate ownership and origin independent of location, it may be a good trade-mark. For example, "Liverpool" for cloth made at Hieddersfield (*Hirst* v. *Denham,* L. R., 14 Eq. Cas., 542); "Dublin Soap" made in the United States (In re Cornwall, 12 Pat. Off. Gaz., 312); "German Soap" made in the United States (*In re Green,* 8 Pat. Off. Gaz., 729); "Vienna Bread" for bread made in New York (*Fleischmann* v. *Schuckmann,* 62 How. Pr. (N. Y. Sup. Ct., 92); "Anatolia" stamped on liquorice (*McAndrew* v. *Bassett,* 10 Jur. N. S., 492 and 550, per Westbury, L. C.); Browne on Trade-Marks Secs. 184, 185. Upon this distinction it is difficult to understand why the word "German" upon a package which expressly shows that it is made at "Findlay, Ohio, U. S. A.," may not be a valid trademark.

It is no doubt true that in a technical sense there can be no trade-mark in the name of a person; because all such names are generic, and because, speaking in a general sense, every person has the right to use his own name for the purposes of trade. There is, however, an important qualification of the general rule which is called for in cases like the one now under consideration. The name of the inventor or original maker of an article of traffic, if not used in a way which would be likely to deceive or defraud, will be protected as a trade-mark, and the right to use such trademark and to be protected therein, will pass by assignment. (*Filkins* v. *Blackman,* 13 Bl. C. C., 440; *Fulton* v. *Sellers & Co.,* 4 Brewst., 42; *Skinner et al* v. *Oakes et al,* 10 Mo. App., 45; *Oakes* v. *Tonsmierre,* 4 Woods, 547; and see *McLean* v. *Fleming,* 96 U. S., 245; *Massam* v. *Thorley's Cattle Food Co.,* 14 Ch. Div., 748). In the present case the plaintiff's alleged trade-mark identified, as the fact was found by the circuit court, a "croup remedy" which originated with one Dr. August Drake, a German physician who formerly resided in the state of Iowa, and from whom the plaintiff obtained the formula. In that sense, therefore, the plaintiff's trade-mark indicates the origin, and is a guarantee of the character and quality of the remedy which was sold with that trade-mark for ten years before the defendant, Warren W. Drake, who resided during all of that time in the same town in which the plaintiff conducted his business, came into the market with his competitive

product. Warren W. Drake had the right to make and sell a croup remedy different from the plaintiff's compound, using his own name; but under the circumstances found by the court below he could only do so in such an honest and legitimate manner that the public would not be deceived nor his competitor defrauded. For the reasons stated and upon the facts specially found by the circuit court, which are conclusive here, we are satisfied that the plaintiff has such an interest in the words "Dr. Drake's German Croup Remedy" as a trade-mark that the use of the words "Dr. Drake's Famous German Croup Remedy" by the defendants is an infringement thereof.

But the plaintiff in error insists that even if the plaintiff below has a valid trade-mark, the label used by the defendants is not such a simulation of the label of the plaintiff as to entitle the latter to an injunction. They argue that "the plaintiffs in error put out their own medicine; it was a croup medicine; they had a right to label it and describe it and commend it and state the manner of its use;" that a mere inspection of the two labels would show that they differ; and that a very conspicuous difference is the portrait of Warren W. Drake on the label of the plaintiffs in error. This contention brings us to the consideration of the application of the doctrine of fraudulent or unfair competition. When a technical trade-mark is imitated that fact itself constitutes a ground for relief. In cases of unfair competition, so called, courts of equity proceed on the ground of preventing fraud upon the public and upon the complainant. Hence "where a label or style of package is imitated, it is necessary to show by evidence an intent to deceive the public and to steal the plaintiff's market. This intent may be shown by proof of actual deception, but it may be inferred from an examination of the real and spurious labels," etc. Bouvier Law Dic. (Rawle's Ed.), Trade-Mark. In *Coats* v. *Merrick Thread Co.,* 149 U. S., 562, 566, it was said by Brown, J., that: "Irrespective of the technical question of trade-mark, the defendants have no right to dress their goods up in such manner as to deceive an intending purchaser and induce him to believe he is buying those of the plaintiff." Positive proof of fraudulent intent is not required if the simulation is clearly shown. Although the differences between the labels or packages may be readily seen on comparison, yet if the infringing device be such that persons exercising ordinary caution are liable to be misled into purchasing the article bearing the objectionable device when they intend to

purchase the other one, an injunction will be allowed. The following are some of the cases in which relief has been granted without regard to the question whether a technical trade-mark is infringed or not: *Opperman* v. *Waterman et al,* 95 Wis., 583; *Pierce* v. *Guittard et al,* 68 Cal., 68; *Conrad* v. *Joseph Uhrig Brewing Co.,* 8 Mo. App., 277; *The American Brewing Co.* v. *The St. Louis Brewing Co.,* 47 Mo. App., 14; *Filley* v. *Fassett,* 44 Mo., 168; *Ketter* v. *The B. F. Goodrich Co.,* 117 Ind., 556; *Boardman et al* v. *Meriden Britannia Co.,* 35 Conn., 402; *Foster* v. *The Blood Balm Co.,* 77 Ga., 216; *Metzler* v. *Wood,* 8 L. R. Ch. Div., 606; *Lever* v. *Goodwin,* 36 L. R. Ch. Div., 1; *Simmons Medicine Co.* v. *Mansfield Drug Co.,* 93 Tenn., 84.

Upon comparing the two labels in this case it is apparent, as contended by the plaintiff in error, that there are marked differences, one of them being the portrait of Dr. Warren W. Drake, there being no portrait on the plaintiff's label. Nevertheless there is a palpable effort at simulation of the plaintiff's prior label, and it is so successful that ordinary buyers, if they did not compare the labels, etc., would be likely to accept the medicine of the defendants for that of the plaintiff. The form and size of the packages and the color and general appearance of the labels are so nearly identical that unless the buyer's suspicions were aroused, he might readily accept the one for the other and be none the wiser. It is not disputed, and the fact is found by the court below, that the plaintiff's label was in use long before that of the defendants, and the differences as well as the similarity of the inscription on the labels are of such character as to compel the inference that the label used by the defendants was deliberately made in imitation of that of the plaintiff and made to deceive.

The typographical devices and distinctions will appear upon examination of the *fac similes* of the labels, contained in the statement of the case; but the verbal differences will appear as follows, the variations from the plaintiff's label being here made to appear in the defendant's label by italics. Plaintiff's label on the front of the package is in the words following: "One Dose Cures. Dr. Drake's German Croup Remedy. Trade Mark. A Positive Cure for Croup in its Most Dangerous Forms. Instant Relief for Whooping Cough, Hoarseness, Etc. Price 35 cents. Prepared by The Glessner Medicine Co., Findlay, Ohio, U. S. A." The defendant's label on front of the package is in the words following: "One Dose *Gives Relief*. Dr. Drake's *Famous* German

Croup Remedy. A *Sure* Cure for Croup in its Most Dangerous Forms. *Quick* Relief for Whooping Cough and Hoarseness. Price 35 Cents. Prepared by *The Drake Medicine Co.,* Findlay, Ohio, U. S. A. Incorporated." The defendant's label also contained after the words "Dr. Drake's" the portrait of the defendant, Warren W. Drake, with the word "Trade-Mark."

The plaintiff's label on the back of the package was in the words following: "The proprietors Authorize Every Dealer To Guarantee The German Croup Remedy to Cure Croup of the most aggravated form, and will refund the money should it ever fail. One Dose Cures in nine out of ten cases, and at the utmost not exceeding two doses are necessary. Relief Is Almost Instantaneous. While prompt in its action, it is so entirely harmless that it will not sicken even a baby. It Has Never Been Known To Fail." The defendant's label on the back of the package was in the words following, indicating the variations from plaintiff's label, as nearly as possible, by italics: *"Dr. Drake* Guarantees The *Famous* German Croup Remedy To Cure Croup *And Hoarseness In The Most Serious Cases If Directions Are Carefully Followed.* It Has Never Been Known To Fail. *For Colic And Bowel Trouble There Is No Better Treatment Than Dr. Drake's Croup Remedy."*

The circuit court after hearing and considering the evidence in the case made the following special finding, viz.: "That in adopting the label and in the manner of formulating their label and trade-mark, the defendants designed as nearly as possible to imitate plaintiff's trade-mark and label for the fraudulent purpose of deceiving the public, and defrauding the plaintiff as well, by causing it to be believed by the public that defendant's remedy was that of the plaintiff, intending thereby to profit by the good will of plaintiff's said business and the fame of his remedy with the trade and general public." For the reasons stated we find no error in the conclusion of law made by the circuit court upon the facts found by it, nor in the decree made accordingly.

The second contention of the plaintiff in error, viz., that the plaintiff below has so conducted himself toward the public and the defendants that he can not be heard to complain of the defendants, has not only no support in the findings of fact made by the circuit court, but the contrary appears.

*Judgment affirmed.*