**AAA INSTALLERS, et al., Plaintiffs,**

v.

**SEARS HOLDINGS CORPORATION, et al., Defendants.**

**Case No. 3:10–cv 00237.**

United States District Court,
S.D. Ohio,
Western Division,
at Dayton.

Jan. 10, 2011.

Mark J. Bamberger, The Mark Bamberger Co., LLC, Tipp City, OH, for Plaintiffs.

**ENTRY AND ORDER GRANTING DEFENDANT SEARS HOLDING CORPORATION'S MOTION TO DISMISS** (Doc. 6).

THOMAS M. ROSE, District Judge.

Before the Court is Defendant Sears Holding Corporation's Motion to Dismiss. (Doc. 6). Plaintiffs AAA Installers, Inc. and Jeffrey and Renee Johnson have responded. (Doc. 7). As Sears points out, Jeffrey and Renee Johnson, as shareholders of AAA Installers, Inc., lack standing to sue for causes of action owned by the corporation, and will be dismissed. With regard to the claims against Defendant Sears Holding Corporation, except for the claim for business interference, the claims stated against Sears in the complaint must

fail in regard to both defendants. Even the business interference claim, however, fails against Sears. Thus, all claims by AAA directed against Sears will be dismissed in their entirety. Accordingly, the Court will grant Defendant Sears Holding Corporation's Motion to Dismiss. (Doc. 6).

## I. Background

For 15 years, the main line of business for Plaintiff AAA Installers Inc. ("AAA") was the installation of home appliances, such as dishwashers and electric garage door openers. (Compl. ¶¶ 8–9.) AAA obtained installation contracts (or "jobs") through agreements with "several major retail stores." (*Id.* at ¶ 10.) When Plaintiffs Jeffrey and Renee Johnson ("Johnsons") purchased AAA in October 2008, they confirmed a "long-standing oral contract" with Defendant Sears Holding Corporation ("Sears") to allow AAA to bid for installation contracts with Sears. (*Id.* at ¶ 11.) AAA derived 80% of its business through bids that Sears awarded to AAA. (*Id.*) The Plaintiffs did not attach to the Complaint a copy of the written contract between AAA and Sears. (See Compl.) However, Plaintiffs refer to the written contract in the Complaint: "[a]lthough there was no clause referencing minimum sales in the agreement made between Sears and Plaintiffs...." (*Id.* at ¶ 12.)[1] Importantly, the written agreement stated that "no promises or representations whatsoever have been made as to the potential number of ... installation jobs ... that [AAA] will receive during the Term of this Agreement...." ("Authorized Servicer Agreement," at ¶ 15, attached as Ex. A to Def. Sears' Memo. Supp. Mot. Dismiss, Hereinafter "Servicer Agreement.")

Further, this agreement included an integration clause, purportedly to manifest the parties' intent that the written agreement contained the entirety of their pact:

> This Agreement constitutes the entire agreement between the parties with respect to the subject matter herein. This Agreement may not be varied, altered or changed in any respect except by a written agreement signed by both of the parties. No representative of either party has or shall have authority to make any oral modification in the terms of this Agreement.

(*Id.* at ¶ 41.)

The integration clause is important because Plaintiffs allege that "there was an on-going understanding that AAA would receive an equal opportunity to bid on any Sears' installation contracts in the Greater Dayton, Ohio region." (Compl. ¶ 12.) By January 2009, Sears had decided to alter the method by which it collected bids for installation jobs. (*Id.* ¶ 13.) The new method was an Internet-based process that allowed Sears to award contracts to the qualified company with the lowest bid. (*Id.*) Plaintiffs allege that a rival corporation, Defendant Elite Alliances Services ("Elite"), was able to submit bids, and then win jobs, ahead of Elite's competitors. (*Id.* at ¶¶ 14–16.) Conversely, the AAA business suffered a 75% decrease (compared to a 15% decrease in the overall installation market in the Dayton area after the new process was instituted). (*Id.* at ¶ 17.) As a result of the downturn in

---

1. In Plaintiffs' Reply Memorandum to Sears Motion to Dismiss, Plaintiffs do not dispute the existence of the written agreement. (See Pl.'s Memo. Resp. to Def. Sears' Mot. Dismiss.) In fact, Plaintiffs refer to the written agreement: "The Plaintiffs entered into Agreement with Defendant Sears which laid out terms and conditions of their business relationship...." (*Id.* at 2.) Later, Plaintiffs allude to the written contract: "Regardless of the integration clause included in the contract between AAA and Sears ..." (*Id.* at 4); "The Defendants do not dispute the existence of an Agreement between Sears and the Plaintiffs." (*Id.* at 5.)

sales, the Johnsons filed for Chapter 7 bankruptcy. (Compl. ¶ 19.)

On May 17, 2010, AAA and the Johnsons filed a complaint naming Sears and Elite as defendants in the Court of Commons Pleas, Miami County, Ohio. The complaint was removed to this Court on May 21, 2010. Against Defendant Sears, the Plaintiffs allege (1) fraud, (2) breach of fiduciary duty, (3) civil conspiracy, (4) collusion, (5) coercion, (6) interference with prospective economic advantage, (7) intentional interference with right to pursue lawful business, (8) unfair competition, and (9) intentional infliction of emotional distress.[2] (See Compl.) Defendant Sears has responded with a motion to dismiss. (Doc. 6).

## II. Jurisdiction

AAA Installers is an Ohio corporation with its principal place of business in Tipp City, Ohio. (Compl. ¶ 2.) Plaintiffs Jeffrey Johnson and Renee Johnson are sole owners of AAA. (*Id.* at ¶¶ 1, 3.) Defendant Sears Holding Corporation is a Delaware corporation, with a principal place of business located in Illinois. (*Id.* at ¶ 4.) Defendant Elite Alliances Services, Inc. is a Florida corporation with a principle place of business in Florida. (*Id.* at ¶ 5.) As such, this Court has jurisdiction to hear this case under the diversity provision of 28 U.S.C. § 1332.

## III. Standard of Review

Sears moves the Court to dismiss the Johnsons pursuant to Federal Rule of Civil Procedure 12(b)(1), and the claims brought by AAA Installers, Inc. pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A. 12(b)(1) Standard

A court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker* 645 F.2d 404, 413 (5th Cir.1981). If a court "considers factual issues outside the record on a Rule 12(b)(1) motion, [the court] must do so in a manner that is fair to the non-moving party." *Rogers v. Stratton Indus.,* 798 F.2d 913, 918 (6th Cir.1986); *and see Kroll v. United States,* 58 F.3d 1087, 1093 n. 9 (6th Cir.1995) ("[W]hen reviewing certain 12(b)(1) motions to dismiss, a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." (internal quotations omitted)). The supplementation of the record does not convert a Rule 12(b)(1) motion to a summary judgment motion. *Rogers,* 798 F.2d at 916. The plaintiff holds the burden of proving jurisdiction after a challenge to subject matter jurisdiction through Rule 12(b)(1). *Id.* at 915.

### B. 12(b)(6) Standard

To conclude that a plaintiff has failed to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), a court "must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC,* 561 F.3d 478, 488. Though, a court need not accept as true the legal assertions of the plaintiff. *Id.* "[T]o survive a motion to dismiss a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest

---

**2.** In addition, Plaintiffs allege tortuous interference with employment relationship "as to Defendant 2" (which the Court assumes is Elite).

a 'right to relief above a speculative level.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 569, 545, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In addition to the complaint, a court, "must consider ... other sources ..., in particular, documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322–23, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). "In considering a motion to dismiss for failure to state a claim under [Rule 12(b)(6) ], a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated into the complaint by reference." *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991).

## IV. Analysis

Sears asserts that Jeffrey Johnson and Renee Johnson, as sole shareholders of AAA, are improper parties to the suit for damages to the corporation and should be dismissed pursuant to Rule 12(b)(1). They further assert that Plaintiffs have failed to state claims upon which relief can be granted and that all claims directed to Sears should be dismissed pursuant to Rule 12(b)(6).

### A. Rule 12(b)(1) Subject Matter Jurisdiction and Standing to File Suit

"The 'well-settled' general rule, recognized in Ohio and elsewhere [is that] 'only a corporation and not its shareholders can complain of an injury sustained by, or a wrong done to, the corporation.'" *B. & V. Distrib. Co. v. Dottore Co., LLC,* 278 Fed.Appx. 480, 485 (6th Cir.2008) (quoting *Adair v. Wozniak,* 23 Ohio St.3d 174, 176, 492 N.E.2d 426, 429 (1986)). Moreover, this rule applies "even where ... the individual who seeks redress for corporate injuries is the corporation's sole shareholder." *Id.* And under Federal law, "an action to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation." *NBD Bank, N.A. v. Fulner,* 109 F.3d 299, 301 (6th Cir.1997).

In signing the written agreement between AAA and Sears, Jeffrey Johnson signed as "President" of AAA, and not as an individual. (Servicer Agreement at 17.) In addition, the Complaint purports that the Johnsons were sole shareholders of AAA: "... AAA was at all pertinent times relevant to this complaint owned in its entirety by the Plaintiffs...." (Compl. ¶ 3). As shareholders of the corporation, the Johnsons are improper parties to claims in the suit pertaining to damages to the corporation. Accordingly, the Court will grant Sears' motion to dismiss the claims of Jeffrey Johnson and Renee Johnson.

### B. Consideration of Claims against Defendant Sears

#### i. Fraud

Plaintiffs assert that "Sears represented to Plaintiffs that the bidding process would remain open and objective." (Compl. ¶ 22.) Based on this representation, Johnsons "paid a significant amount [of] money to purchase AAA." (*Id.*) Sears is alleged to have later altered the bidding process to provide Elite with an unfair advantage in the process. (*Id.* at ¶ 23.) Plaintiffs assert that Sears knew or should have known that such action would cause serious detriment to Plaintiff AAA. The Complaint provides no specific instance (time, place, etc.) of the alleged fraud, and instead relies on general accusations. (See *Id.* at ¶¶ 21–25.) Plaintiffs have not sought permission to amend their complaint.

Under the Federal Rules of Civil Procedure, a party "alleging fraud ... must state with particularity the cir-

cumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). An allegation of fraud "must state the specific circumstances surrounding the alleged fraud with particularity." *Wagner v. Circle W. Mastiffs,* 732 F.Supp.2d 792, 806 (S.D.Ohio 2010)(Smith, J.). The pleading requirement provides notice to a defendant, who must be aware of specific conduct giving rise to the suit so the defendant can prepare the responsive pleading. *Id.* at 806. To meet this requirement, the claim must be

> sufficiently detailed to satisfy the notice requirement ... [specifying] the parties and the participants to the alleged fraud, the representations made, the nature in which the statements are alleged to be misleading or false, the time, place and content of the misrepresentations, the fraudulent scheme, the fraudulent intent of the defendants, reliance on fraud, and the injury resulting from the fraud.

*Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 679 (6th Cir.1988). Although "Rule 9(b) does not require omniscience[,] the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Id.* The plaintiff need not provide facts and evidence of the fraud—only the circumstances with particularity. *Id.* n. 9. That being said, the relaxation of the rule would not eliminate the requirement that the plaintiff "specifically allege the essential elements of fraud." *United States ex. rel. Bledsoe v. Cmty. Health Sys.,* 501 F.3d 493, 505 (6th Cir.2007).

▮▮▮▮ Six elements comprise fraud in Ohio: "a) a misrepresentation ..., b) ... material to the transaction at hand, c) made falsely, ... d) with the intent of misleading another into relying upon it, e) justifiable reliance upon the misrepresentation ..., and f) a resulting injury proximately caused by the reliance." *Wing v. Anchor Media, Ltd.,* 59 Ohio St.3d 108, 111, 570 N.E.2d 1095 (1991). To prove fraud in the inducement, a plaintiff must prove that the defendant made a material misrepresentation, with the intent of inducing the plaintiff's reliance, and that the plaintiff detrimentally relied upon that misrepresentation. *ABM Farms Inc. v. Woods,* 81 Ohio St.3d 498, 502, 692 N.E.2d 574 (1998).

Here, AAA claims it "reaffirmed a long-standing oral contract with Sears" to bid for installation contracts. (Compl. ¶ 11.) That alleged oral contract generally comports with the written contract language. (See Servicer Agreement at ¶¶ 2–3.) However, the written contract also spells out the limitations of the agreement:

> It is understood that no promises or representations whatsoever have been made as to the potential number of ... jobs ... that [AAA] will receive during the Term of this Agreement.... Sears may offer ... jobs ... to other Sears authorized servicers. [AAA] represents and warrants that it has not incurred and does not intend to incur any expenses for additional personnel, facilities, or equipment in reliance about or in anticipation of receiving ... jobs ... from Sears....

(*Id.* at ¶ 15.) The written contract specifies further that "[AAA] acknowledges that its relationship with Sears under this agreement is nonexclusive." (*Id.* at ¶ 31.) The contract also contains an integration clause, which states,

> This Agreement constitutes the entire agreement between the parties with respect to the subject matter herein. This Agreement may not be varied, altered or changed in any respect except by a written agreement signed by both of the parties. No representative of either party has or shall have authority to

make any oral modification in the terms of this Agreement.

(*Id.* at ¶ 41.)

One crucial element of fraud is misrepresentation. By the reading of the contract, Sears stated specifically that AAA should not anticipate a minimum number of jobs. Moreover, Sears was forthright in reserving its right to award jobs to other authorized installers. The plain language of the contract seems to warn AAA against relying on the amount of work that Sears might provide. This fact points against finding a second element of fraud in this matter (the intent of inducing the plaintiff's reliance). Because two crucial elements of fraud are not present here, the Plaintiffs' fraud claim must fail against both Sears and Elite.

### ii. Breach of Fiduciary Duty

 A fiduciary relationship is a type of relationship "in which a special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *In re Termination of Employment of Pratt,* 40 Ohio St.2d 107, 115, 321 N.E.2d 603, 609 (1974). "A fiduciary is one who, due to his own undertaking, has a duty to act 'primarily for the benefit of another in matters connected with his undertakings.'" *Ligman v. Realty One Corp.,* 2006 WL 2788598, Ohio App.Ct. 9th Dist. 2006, 2006–Ohio–5061, at ¶ 9 (quoting *Haluka v. Baker,* 66 Ohio App. 308, 312, 34 N.E.2d 68 (1941)). The party asserting the fiduciary relationship holds the burden of establishing the existence of a fiduciary relationship. *Ligman,* 2006 WL 2788598, at ¶ 9. The elements of a breach-of-fiduciary-duty claim are "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom." *Camp St. Mary's Assn. of W. Ohio Conference of United Methodist Church,*

*Inc. v. Otterbein Homes,* 176 Ohio App.3d 54, 2008–Ohio–1490, 889 N.E.2d 1066, at ¶ 19 (Ct.App. 3rd Dist.). A fiduciary relationship "may arise from an informal relationship only if both parties understand that a special trust or confidence has been reposed." *Craggett v. Adell Ins. Agency,* 92 Ohio App.3d 443, 635 N.E.2d 1326, 1331 (Ct.App. 6th Dist.1993). An "ordinary business relationship cannot be turned into a fiduciary one absent factors of mutual knowledge of confidentiality or the undue exercise of power or influence." *Anchor v. O'Toole,* 94 F.3d 1014, 1024 (6th Cir.1996). An existing fiduciary relationship is pivotal to a breach-of-fiduciary-duty claim. *Wells Fargo, N.A. v. Sessley,* 188 Ohio App.3d 213, 2010–Ohio–2902, 935 N.E.2d 70, at ¶ 36. Without the fiduciary relationship, such a claim fails. *Id.*

 Plaintiffs claim of the existence of a fiduciary duty on "the tenor of the business relations and promises made by Sears to the Plaintiffs." (Compl. ¶ 27.) However, the language of the agreement undermines Plaintiffs' assessment of the relationship. The contractual agreement here does not give rise to a fiduciary relationship. Based on the formal language of the agreement, plus the provision that offers no guaranteed minimum number of bids to AAA, the complaint describes an arm's length relationship between two business entities. That Sears' referrals for jobs were important to AAA does not mean that AAA's work and business success were equally important to Sears. An informal fiduciary relationship can arise only when both parties understand that special trust or confidence; there is no allegation that Sears contemplated a special trust ant the contract terms belie the possibility. Because no fiduciary relationship existed, the claim for breach of fiduciary duty fails.

### iii. Civil Conspiracy

■■ Plaintiffs' third cause of action is civil conspiracy, wherein Sears and Elite are alleged to have conspired to alter the bidding process "for the purpose of putting the Plaintiffs in a financially burdensome and unconscionable contract situation." (Compl. ¶ 34.) Plaintiffs also cite to the Ohio Revised Code § 1331.04.

■■■ Ohio courts define Civil conspiracy as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419, 650 N.E.2d 863, 866 (1995) (quoting *LeFort v. Century 21–Maitland Realty Co.*, 32 Ohio St.3d 121, 126, 512 N.E.2d 640, 645 (1987)). In Ohio, a plaintiff claiming civil conspiracy must establish the following four elements: "(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy.'" *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 534 (6th Cir.2000) (quoting *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 90 Ohio App.3d 284, 629 N.E.2d 28, 33 (1993)). "An underlying unlawful act is required before a civil conspiracy claim can succeed." *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475, 700 N.E.2d 859, 868 (1998). The malice requirement would involve "that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another.'" *Id.* (quoting *Pickle v. Swinehart*, 170 Ohio St. 441, 443, 166 N.E.2d 227, 229 (1960)). Ohio law allows for fraud to serve as an underlying unlawful act. *Federal Ins. Co. v. Webne*, 513 F.Supp.2d 921 (N.D.Ohio

2007). But here, Plaintiffs' allegations do not satisfy a fraud claim. With no underlying unlawful act, the civil conspiracy claim fails against both defendants.

Plaintiffs also allege a violation of Ohio Revised Code § 1331.04, which provides:

> A violation of sections 1331.01 to 1331.14, inclusive, of the Revised Code, is a conspiracy against trade. No person shall engage in such conspiracy or take part therein, or aid or advise in its commission, or, as principal, manager, director, agent, servant, or employer, or in any other capacity, knowingly carry out any of the stipulations, purposes, prices, or rates, or furnish any information to assist in carrying out such purposes, or orders thereunder, or in pursuance thereof, or in any manner violate said sections. Each day's violation of this section is a separate offense.

O.R.C. § 1331.04 (2010). The referenced code sections 1331.01 to 1331.04 deal with monopolies and restraint of trade. *See* O.R.C. §§ 1331.01–.14. Plaintiffs' reliance on this statute is misplaced. It is difficult to comprehend how an appliance retailer, working with a set of appliance installers, could form a monopoly.

### iv. Collusion

■■ Plaintiffs' fourth cause of action alleges collusion [3] by Sears and Elite in "restrict[ing] the bidding process in such a way to inappropriately advantage Elite...." (Compl. ¶ 43.) Courts have defined collusion as "[a]n agreement between two or more persons to defraud a person of his rights by the forms of law or to obtain an object forbidden by law." *Warren v. Union Bank of Rochester*, 157 N.Y. 259, 51 N.E. 1036, 1038–39 (1898). In a

---

**3.** Plaintiffs' fourth cause of action begins with an allegation of collusion, but halfway through, the claim shifts to an allegation of negligence, and concludes that "[t]he Defen-

dants are therefore liable to the Plaintiffs to damages caused by the former's negligence." (Compl. ¶ 44.) Plaintiffs' response, however, clarifies that this claim is for collusion.

simpler definition, collusion is "[a]n agreement between two or more persons to defraud another of his rights by the forms of law or to secure an object forbidden by law." *Ballentine's Law Dictionary* (3d ed.2010). "In Ohio, collusion is defined as 'an agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by the law. It implies the existence of fraud of some kind, the employment of fraudulent means, or of lawful means for the accomplishment of an unlawful purpose.'" *Williams v. Ohio Edison*, Slip Copy, 2009 WL 3490945 (Ohio App. 8th Dist.2009). "In law, collusion is a species of fraud." *Gaer Bros., Inc. v. Mott*, 144 Conn. 303, 130 A.2d 804, 807 (1957).

For the same reasons that Plaintiffs' allegation of fraud fails, Plaintiffs' allegation of collusion also must fail. Under terms of the written contract, AAA was informed that the relationship between AAA and Sears was nonexclusive (Servicer Agreement at ¶31) and that Sears made no promises as to the minimum number of jobs that AAA might receive. (*Id.* at ¶15.) Under the agreement terms, Sears was clearly permitted to contract with other installers, and Sears was not bound to supply AAA with a minimum number of jobs. The fact that Sears preferred to provide increased opportunities to Elite does not give rise to fraud. If AAA never had a right to those jobs, then Sears and Elite could not have defrauded AAA from performing the jobs.

### v. Coercion

Plaintiffs allege coercion as their fifth claim against Sears and Elite. According to the Complaint, Plaintiffs relied on the prior relationship with Sears and the historical number of jobs that Sears provided. In a manner not specified in the Complaint, "Sears began to improperly use [its] corporate power and influence." (Compl.

¶47.) Also, in some manner not specified, Elite "took advantage of the Plaintiffs for [its] own financial gain." (*Id.*) Allegedly, Defendants Sears and Elite engaged in unidentified "conduct that constitutes the improper use of economic power …" that resulted in a detrimental financial impact on Plaintiffs. (*Id.* at ¶48.)

■ Coercion is not recognized as a "distinct common law tort." *Thompson v. City of Columbus*, 2001 WL 1681129 (S.D.Ohio 2001) at *12. Therefore, as a matter of law, Plaintiffs' claim of coercion will be dismissed in its entirety.

### vi. "Interference with Prospective Economic Advantage"

■ Plaintiffs' next cause of action directed to Sears alleges "Interference with Prospective Economic Advantage." Under Ohio law, the tort of business interference occurs when one who, "without a privilege to do so, induces or otherwise purposely causes *a third party* not to enter into, or continue, a business relationship with another, or perform a contract with another, is liable to the other for the harm caused thereby." *Juhasz v. Quik Shops, Inc.*, 55 Ohio App.2d 51, 57, 379 N.E.2d 235, 238 (Ct.App. 9th Dist.1977) (emphasis added). In order for a person to interfere, the person must not be party to the contract. *Scanlon v. Gordon F. Stofer & Bros., Co.*, 1989 WL 69400 at *4 (Ohio Ct.App. 8th Dist.1989).

In the case a bar, Sears and AAA are parties to the contract. It would not be possible for Sears to wrongly interfere with its own contract with AAA. Accordingly, the claim of business interference is dismissed as to Sears.

### vii. "Intentional Interference with Right to Pursue Lawful Business"

■ In the next claim against Sears, Plaintiffs invoke the Fourteenth

Amendment to the U.S. Constitution, and article I, section 19 of the Ohio Constitution to claim "Intentional Interference with [Plaintiffs'] Right to Pursue Lawful Business." The Fourteenth Amendment states,

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1. The adoption of the Fourteenth Amendment, along with the Thirteenth and Fifteenth, "guaranteed [freedom and equality] expressly to all regardless of 'race, color, or previous condition of servitude.' " *Bell v. Maryland,* 378 U.S. 226, 287, 84 S.Ct. 1814, 12 L.Ed.2d 822 (1964) (quoting *United States v. Reese,* 92 U.S. 214, 218, 23 L.Ed. 563 (1875)).

The Ohio Constitution, article I, section 19 deals with the power of eminent domain,

Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure, or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money, and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money, and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner.

Ohio Const. art. I, § 19.

Plaintiffs' reliance on these provisions in the U.S. Constitution and the Ohio Constitution seems misplaced. The absence of a state actor makes them inapposite to this case. As a result, the claim for "Intentional Interference with Right to Pursue Lawful Business" will be dismissed as to all Defendants.[4]

### viii. Unfair Competition

 Plaintiffs' eighth cause of action directed to Sears is unfair competition, which courts have defined generally as a circumstance in which "the defendant has acted in such a way that commercial injury has been unfairly caused to the plaintiff." *Booth American Co. v. Commonwealth Communications Serv.,* 1987 WL 123989, at *2, 1987 U.S. Dist. LEXIS 13911, at *5 (N.D.Ohio 1987). Though, "[a] more precise definition does not appear to be feasible." *Id.* at *2, 1987 U.S. Dist. LEXIS 13911 at *5–*6. "Unfair competition ordinarily consists of representations by one person, for the purpose of deceiving the public, that his goods are those of another." *Water Management v. Stayanchi,* 15 Ohio St.3d 83, 85, 472 N.E.2d 715, 717 (1984) (citing *Drake Medicine Co. v. Glessner,* 68 Ohio St. 337, 67 N.E. 722 (1903)). More examples of "unfair commercial practices [include] malicious litigation, circulation of false rumors, or publication of statements, all designed to harm the business of another." *Id.* (citing *Henry Gehring Co. v. McCue,* 23 Ohio App. 281, 284, 154 N.E. 171, 171–72 (Ohio Ct.App. 8th Dist.1926)).

---

**4.** In both this claim and in the Interference with Prospective Economic Advantage claim, Plaintiffs allege: "On information and belief, the *Plaintiffs* are liable for damages." (Compl. ¶ 57, 61) (emphasis added.)

■ The claim put forth by Plaintiffs allege that Sears gave Elite advance knowledge of jobs coming up for bid (Compl. ¶ 63), and in so doing, "conspir[ed] to create a monopoly for Elite in the Dayton, Ohio area." (*Id.*) The Complaint does not include allegations that Sears and Elite offered misrepresentations to the public regarding AAA's services, nor does the Complaint allege that Sears misrepresented its own services to be those of AAA. Absent such allegations, the claim of unfair competition fails against all defendants, and the Court will dismiss the claim.

■ Plaintiffs here also restate an alleged violation of Ohio Revised Code section 1331.04. As discussed earlier, this statute is a prohibition of conspiracy against trade, O.R.C. § 1331.04 (2010), which fails without an underlying unlawful act, independent of the actual conspiracy. *See Aetna Cas. & Sur. Co. v. Leahey Constr. Co., supra.* Sears' preference for awarding jobs to Elite rather than to AAA does not rise to the level of unlawful behavior. Thus, the claim of a violation of Ohio Revised Code section 1331.04 is also without merit.

### ix. Intentional Infliction of Emotional Distress

■ Plaintiffs' final claim against Sears alleges Intentional Infliction of Emotional Distress: "On information and belief, the Defendants knowingly and purposefully conducted a process of systematic deception and conspiracy ... [to] cause and unfair competitive environment ... and substantial financial harm to the Plaintiffs." (Compl. ¶ 51.) After "a longstanding business relationship ... Plaintiffs were therefore directly harmed emotionally by the substantial financial loss...." (*Id.* ¶ 52.)

■ Intentional infliction of emotional distress is recognized as a tort in Ohio. *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983). One court summarized the tort: "one who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress." *Id.* To recover under such a claim, a plaintiff

> must prove four elements: (a) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (b) that the actor's conduct was extreme and outrageous, that it went beyond all possible bounds of decency and that it can be considered as utterly intolerable in a civilized community; (c) that the actor's actions were the proximate cause of the plaintiff's psychic injury; and (d) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it.

*Presser v. RCP Mayfield, LLC*, 2009–Ohio–3380, at ¶ 13 (quoting *Pyle v. Pyle*, 11 Ohio App.3d 31, 463 N.E.2d 98, paragraph two of the syllabus (Ct.App. 8th Dist.1983)). A breach of contract, absent extreme and outrageous conduct, does not amount to intentional infliction of emotional distress. *Martin v. JBS Technologies, LLC*, 443 F.Supp.2d 962, 970 (S.D.Ohio 2006).

The allegations set forth in the Complaint are devoid of facts which might sustain a claim for intentional infliction of emotional distress. Plaintiffs allege that Defendants took actions that Defendants knew "would cause an unfair competitive environment, resulting in ... financial harm to the Plaintiffs." (Compl. ¶ 51.) Missing from the Complaint is any allegation that Sears intended to inflict emotional harm upon the Plaintiffs. Moreover, Sears' actions (the decision to direct business to another vendor) cannot satisfy the

second element of the tort; choosing one installer over another could not be considered beyond the bounds of decency or utterly intolerable in a civilized community. Even if Sears actions were the proximate cause of Plaintiffs' injuries, the claim fails on part four as well: a business owner is expected to endure the financial hardship that goes along with a struggling or failing business. The Plaintiffs allegations, even if true, cannot support a claim of intentional infliction of emotional distress against either defendant.

## V. Conclusion

As shareholders of AAA, Jeffrey Johnson and Renee Johnson are improper parties to claims in a suit pertaining to damages to the corporation. Therefore, the Court grants Sears' motion to dismiss the claims of Jeffrey Johnson and Renee Johnson. Further, assuming all allegations in the complaint to be true, the Court finds that Plaintiffs have failed to state claims upon which relief could be granted. Accordingly, Defendant Sears Holding Corporation's Motion to Dismiss (Doc. 6), is **GRANTED.** Two claims from the complaint against pro se Defendant Elite Alliance Services remain: Tortious Interference with Employment Relationship, which the complaint asserts requires the showing of an employment relationship between AAA and Sears, and Interference with Prospective Economic Advantage. A preliminary pretrial conference will be scheduled with regard to the remaining claims.